McGee *v.* State.

(In Banc.   June 10, 1946.)

[26 So. (2d) 680.   No. 36116.]

Jackson & Young, of Jackson, for appellant.

**Greek L. Rice,** Attorney-General, by **R. O. Arrington,** Assistant Attorney-General, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The State charges that about four o'clock in the morning of November 2nd last, appellant sneaked into the bedroom of the prosecuting witness and committed upon her the crime of rape. The intruder was not recognized at the time, and whatever happened was done so quietly that other members of the family in the same and adjoining rooms were not awakened, and the intruder peacefully took his departure. Late in the following day, appellant was arrested in an adjoining county, the police having had reason to suspect appellant as the party. Appellant is a negro and the prosecuting witness is a white woman, married and the mother of three children.

As will later appear, appellant was immediately taken to a jail in an outside county. On November 9th, a special term of court was ordered to convene on December 3rd, and on that day an indictment against appellant was returned by the grand jury, and two members of the bar were appointed to defend him, and the case was set for trial for December 6th. On that day the two lawyers appointed to defend made and filed in court their joint affidavit, which we quote in full:

"Comes now, N. W. Boyd and H. E. Koch, and in behalf of the above named defendant say as follows:

"That the above named defendant was indicted in this Court at a special term thereof convened on Monday December 3, 1945; that the said defendant had been for approximately 30 days prior to the date of said indictment held without bail in the Hinds County Jail, Jackson, Mississippi, on an affidavit charging the defendant with rape of a white woman;

"That the said defendant was indicted on said charge of rape of a white female on the said 3rd day of December 1945, and movants herein, Boyd and Koch, were appointed by the Court to defend the said defendant so charged with a capital offense.

"At about 3:00 o'clock P. M., in the afternoon of December 3, 1945, the defendant was brought into the Court Room by an armed guard, believed by movants to be a part of the State Militia; that the said defendant was so incapacitated physically, either from disease, or because of insanity since the date of his arrest, or because of a nervous collapse as a result of fright since the date of his arrest, that he was unable to advise with counsel appointed by the Court to defend him. The said counsel appointed by the Court to defend the said Willie McGee, undertook to consult with the said McGee as to the nature of the charge against him and any pertinent facts with reference thereto, and with reference to the charge against him; that the said defendant was in a private consultation room with his said counsel for approximately thirty minutes, but his said counsel were unable to get any coherent statement from the said defendant as to any matter about which he was asked; that the County Attorney was present for a part of the time and undertook to get the defendant to make statements to his counsel, all without avail.

"The said attorneys say further that at about 4:45 P. M. on the said 3rd day of December, the said defendant was removed by the said State Militia from the City of Laurel and from the Second District of Jones County, Mississippi, to Jackson, Mississippi. That the said removal took place before the defendant had been calmed or quieted to such an extent that he could converse with his counsel.

"That the said defendant was returned to the courthouse at Laurel, Mississippi, on Thursday, December 6, 1945, at about 9 o'clock A. M., and the case was called for trial. Attorneys for the said defendant again had the prisoner sent to a room in the courthouse where his counsel could interview him and the said attorneys so appointed, and now movants herein, after an hour's interview, found the said defendant to be as they believe either insane or from fright or other causes so shocked

and so mentally unbalanced that he is unable to make a coherent statement and aid his counsel in any manner in preparing this defense.

"Counsel so appointed for the said defendant acting as officers of the court make known to the court the disability of the defendant and the inability of the said counsel to adequately prepare a defense for the said defendant.

"The said counsel also make known to the court the fact that the nature of the charge is such and the public feeling as a result thereof is such that there should be a change of venue, but counsel are unable to get supporting affidavits because of their inability to find kinspeople of the defendant who will make the supporting affidavits; that public opinion and public feeling is such that persons other than members of the family of the defendant are unwilling to become subject to criticism and therefore will not make supporting affidavits though it is a matter of public knowledge that the Sheriff reported to the Governor of the State his inability to protect the defendant and therefore the defendant has been confined since being apprehended outside the county and was brought into the court by a part of the Armed Militia of the State.

"Wherefore, counsel appointed by the court to defend the said defendant now under their oath as officers of the court move the court that inquiry be made as to the sanity of the defendant and in the alternative that if the defendant be found sane the case be continued until such time as the defendant may recover from existing shock to such an extent that he can consult with the said counsel and prepare a defense if the said defendant has a defense to the said charge. Counsel of the said defendant say further that the said cause should be continued so as to give counsel an opportunity to study the facts of the case and prepare such pleas, motions, or other defenses if the facts may justify."

In response to this affidavit the district attorney for the State dictated into the record as follows: "Let the

record show that the State denies that the man is insane or unable to conduct a rational defense; likewise the State denies that he cannot get a fair and impartial trial.'' This done, the court directed that the case proceed upon the issue of the sanity of the accused, and a jury was at once impanelled to try that issue, and four or five lay witnesses having been heard, the jury returned a verdict for the State, following which the defendant was put on trial on the charge, resulting in a conviction and the death sentence. No attention, other than the dictated denial, was paid by the prosecution or by the court to the petition or motion contained in the affidavit as regards a change of venue; and the State now says that no attention was due it because the application for the change of venue was not sworn to by the prisoner as required by Section 2508, Code 1942, which is as follows:

''On satisfactory showing, in writing, sworn to by the prisoner, made to the court, or to the judge thereof in vacation, supported by the affidavits of two or more credible persons, that, by reason of prejudgment of the case, or grudge or ill will to the defendant in the public mind, he cannot have a fair and impartial trial in the county where the offense is charged to have been committed, the circuit court, or the judge thereof in vacation, may change the venue in any criminal case to a convenient county, upon such terms, as to the costs in the case, as may be proper.''

It is true that the application was not sworn to by the prisoner, but it also shows that the prisoner was incapable of making the affidavit for himself, and such being the case, both the reason and the letter of Section 1661, Code 1942, comes into play, that statute being as follows: ''In all cases where the oath or affirmation of the party is required, such oath or affirmation may be made by his agent or attorney, and shall be as effectual for all purposes as if made by the party.''

An application such as this is interlocutory, and we find no instance in the long history in this State of the

quoted statute wherein its reasonable application to purely interlocutory steps has ever been refused in any case civil or criminal, although it has been denied, and sometimes under general language unduly restrictive, as to affidavits necessary to initiate a proceeding such as in the probate of a claim or the filing of a bill for divorce where the facts of the claim and its validity are peculiarly within the knowledge and conscience of the claimant. But there is no such case here; and if the statute were refused application in a case such as is now before us, it would mean that only sane prisoners would be allowed to obtain a change of venue, while an insane person or one otherwise incapable of making the affidavit would be denied the right, and we must deny that the Legislature ever had any such thought that such an indefensible difference should be made. In what we have said we do not decide that a prisoner must be insane or disabled in order that his attorney may make the requisite affidavit. We decide only as to the state of case before us.

Such being our conclusion, we do not have to deal with the question as if no such statute existed, which would bring into review the fundamental requirement that every citizen charged with crime is entitled to a trial by a fair and impartial jury, and that to deny him a fair opportunity to procure such a jury is a denial of due process,— as may be asserted on the broad and high ground that those principles of justice and right which are so rooted in the traditions and conscience of our people as to be ranked as fundamental are, by the due-process clauses of both the state and federal constitutions, made inviolable.

It is the settled rule in this State that when an affidavit for a change of venue is sufficient under the statute it makes a prima facie showing therefor which must be met by the State by proof, Magness v. State, 103 Miss. 30, 60 So. 8, Wexler v. State, 167 Miss. 464, 142 So. 501; and we have already stated that the State and the court paid no attention to the affidavit as to the feature of the change

of venue other than the quoted denial dictated into the record, which, without proof in support of the denial, had as well not been denied at all.

This brings into focus the question whether the affidavit made by the attorneys states a case prima facie for a change of venue. We might rest our conclusion on that issue on our own cases of Brown v. State, 83 Miss. 645, 36 So. 73 and Magness v. State, supra. But we call attention to the fact that the decisions are in substantial accord throughout the country that a case prima facie for a change of venue is made out "where it is shown that the public is so aroused against accused that it was necessary to call out the militia or otherwise protect him from violence or to remove him from the county,"—of which a sufficient number of the cases may be found cited in 22 C. J. S., Criminal Law, Sec. 196, pp. 315, 316.

One of these is Mickle v. State, 85 Tex. Cr. R. 560, 213 S. W. 665, 666. In that case the court said, and we quote it with approval: "The court should also have permitted the filing of appellant's supplemental motion for a continuance, and, if the facts therein stated were true and not controverted by the state, the case should have been postponed or a change of venue ordered. The appellant is a negro, his victim a white man, and it is alleged that such publicity had been given the state's side of the case during the barely 10 days elapsing from the date of the homicide to the trial that a strong public sentiment had been created and existed against appellant. That this was substantially true is made apparent from the fact that, at once upon his arrest on the day following the killing, appellant was taken to the county jail of another county for safe-keeping. When indicted by the grand jury on the 19th, three days after the killing, and brought back to Galveston in order that the statutory requirement for his presence in the setting of his case and the appointment of counsel to represent him, might be met, it further appears that as soon as this was done he was at once sent back to the jail of Harris

county. It also appears that a week later, when the day of his trial came, a strong guard of soldiers were deemed necessary for his protection when brought back to Galveston, and that they met him at the depot and escorted him to the courthouse and were placed abut the courtroom, the blinds and shutters of which were drawn. The trial judge approves the bill of exceptions setting forth these matters, with the statement that it was for the protection of the appellant that the soldiers were present and these precautions were taken. It appears to us that, if public sentiment was such as to necessitate the course of conduct above outlined on the part of the officers of the law, it is difficult to believe that at that time and under those circumstances the accused could obtain that fair and impartial trial which is the proud boast and the guaranteed right of all of our citizens. Impertinence and insolence on the part of negroes to white people are recognized as fruitful sources of aggravation, and when it appears, as in the instant case, that such conduct on the part of appellant caused the fatal affray, great care and caution should be exercised before trying the accused at a time and place when the passions of the people of that locality have been so recently stirred as that it was believed by the authorities to have not yet sufficiently subsided to make the life and limb of the accused free from danger at the hands of the populace.''

It will be noticed that in the concluding portion of the quotation the court referred to impertinence and insolence on the part of negroes towards white people as fruitful sources of aggravation. How much more so is a charge, and reasonable grounds to believe it, of rape by a negro against a white woman.

Since, then, the affidavit, as made, presented a prima facie showing for a change of venue, the inquiry into the sanity of the prisoner should have been postponed until the issue of the change of venue had been heard and determined, and this for the very obvious reason that the prisoner was as much entitled to a fair opportunity to

procure a fair and impartial jury on the issue of his sanity as he was to such a jury on the merits of the charge.

And if it should be sought to answer what has just been said by a contention that no jury wherever selected and impanelled could honestly have returned any other verdict than that the prisoner in this case was sane and fully capable of making an intelligent defense, our reply to that would be that the record is far from conclusive on that point,—leaving aside what is now asserted to be the federal or national rule that where constitutional guaranties have not been observed, it is immaterial whether their observance would have led to a different result.

Having come to the conclusion that on the record as it now stands before us the prisoner was entitled to a change of venue, we do not reach the merits of the charge against him, and because to pursue the several other questions presented would unduly prolong this opinion, we leave all such other questions to a new trial and to a development in an atmosphere and with an opportunity that will permit, and will not paralyze, such development.

Reversed and remanded.