278 So.2d 384 (1973)
Willie Edd GLASS
v.
STATE of Mississippi.
No. 47264.
Supreme Court of Mississippi.
May 14, 1973.
Fair & Mayo, Gene Stringer, Louisville, for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Appellant, Willie Edd Glass was indicted by the Grand Jury of Winston County for the crime of murder in the killing of Ronnie Nance. He was convicted of manslaughter and sentenced to serve a term of fifteen years at the State Penitentiary. From this conviction and sentence he appeals. We affirm.
On Saturday night November 21, 1970, at about nine o'clock the body of Ronnie *385 Nance was found lying in the road near McMillan Switch in Winston County. Dr. John Crawford was called to the scene and he testified that he found a man identified as Ronnie Nance lying face up beside a truck on the driver's side. The first thing he observed was that the man was dead. Upon examination of the body he saw no evidence of trauma, but when the body was turned over, he discovered a large opening in the lower right back between the middle and lower ribs. The doctor stated that it was evident that the man was killed by a shotgun and that the shot went upward and inward. There were powder burns around the wound.
The truck was examined by one of the officers and he found that there was some blood on the back of the seat on the driver's side. No identification was found on the body, but $52 was found in the left front shirt pocket of the deceased.
Helen Ruth Horton testified on behalf of the state that on the night of November 21, 1970, Willie Glass came running up to the house where she was staying. He was out of breath and had a shotgun in his hand and blood on his shirt. He put the gun in the corner of the room and burned his shirt in the fireplace. She said that appellant called her and Vera Lee Goss, who was in the house at that time, into the back room and told them what happened. She said that he told them that this man would not let him out of the truck and they got into it and he shot him. On cross examination she stated that Willie Glass had been living there in the house with her about a month. The house belonged to her grandfather, Elijah Miller, and he was letting her and her sister stay there. In response to questions propounded by counsel for appellant, Mrs. Horton said that appellant told her that he and the man were scuffling, the man grabbed the gun, he (Glass) grabbed it away from him, and it accidentally shot him. She also testified that later appellant got the gun and put it in the loft of the house and the next day appellant took the gun and threw it into the briar patch behind the house.
Vera Lee Goss testified that she was at Mrs. Horton's house on the evening in question when Willie Glass came into the house. He had blood on his shirt and when she asked him what the blood was doing on his shirt, he called them into the back room and told them he had killed this man, but he did not mean to do it. He said that the man wanted him to go to McCool with him, but he did not go. He told them that when they got almost home, the man speeded up and would not let him out. When they got to the bridge, the man stopped and got out of the truck. The man then reached back and got the gun, and he (appellant) got the gun away from him and killed him. On cross examination she said Willie appeared to be frightened, and he told them that Mr. Nance said he had a few things against him, like he was supposed to get him a woman and would not work for him. Mr. Nance then reached for the gun, appellant got the gun away from him, and the shooting was an accident.
Mrs. Ronnie Nance, wife of the decedent, was allowed to testify over the objection of the appellant that in March 1971 she saw appellant working on the Winston County Courthouse lawn. No one else was present, so she stopped and asked him if Ronnie lived very long after he was shot. Appellant told her he thought he was dead before he left, and he just took the gun and billfold and ran because he was scared. On cross examination she said the conversation with appellant took place on the side of the lawn. No one else was present, although she did learn later that one of the deputies was upstairs in the courthouse watching Willie.
Mr. George Woodward, an investigator with the Highway Patrol, testified that he conducted an investigation of the shooting. After appellant had been arrested, he and the deputy sheriff went on two occasions to the house where Willie stayed. The *386 first time they had a warrant to search the house, but found nothing in the house. Two days later they went back to the house, and no one was there except Elijah Miller, the owner of the premises. Miller gave them permission to search the outside of the house. They found a shotgun "in a wooded area just back of the house in a honeysuckle patch." The shotgun was introduced in evidence over the objection of the appellant.
Appellant argues several propositions for the reversal of this case. We will discuss only those which, in our opinion, merit discussion. It is first contended that the trial court erred in overruling the motion of appellant to exclude the evidence and find the appellant not guilty. The basis of this proposition is that the court in passing on this motion was required to assume all the evidence for the state to be true, together with all reasonable inferences that may be drawn from the evidence, and when this was done, in this case, the court was required to take all the testimony of the witnesses Horton and Goss as true, and since these witnesses said that the appellant told them that he accidentally shot Nance while trying to defend himself and that the shooting was an accident, the court should have sustained the motion for a directed verdict. We find no merit in this contention. While appellant was the only eye witness to the shooting, he did not choose to testify. He contends that since the state elected to use his admission to the witnesses Horton and Goss that he shot and killed Nance, that the court was required to take as true his exculpatory statements made to these witnesses. Apparently appellant is trying to invoke the Weathersby rule by what he told third parties. This he cannot do. In considering the motion for directed verdict, the trial court was not only required to consider as true the testimony of the witnesses on behalf of the state, but the court was also required to consider their testimony in the light most favorable to the state, together with all reasonable inferences that could be drawn from the evidence. When this is done in this case, it is clear that the evidence is sufficient to withstand the motion for directed verdict. The state established that appellant shot the deceased in the back at close range, and he left the scene of the shooting carrying the shotgun which he later hid. He never at any time reported the shooting to the officers. There was also testimony that he carried away the decedent's billfold. These things refuted appellant's statement that the shooting was accidental, while trying to defend himself. Under such circumstances, neither the court nor the jury was required to take as true the statements of appellant that he accidentally shot the deceased while trying to defend himself. These statements must be considered along with the other evidence in the case and when so done, the evidence was ample to support the finding of the jury, and its verdict was not against the overwhelming weight of the evidence.
Appellant assigns as error the action of the trial court in allowing the jurors to deliberate in the grand jury room where there were no restrooms and in allowing them to go to the restrooms which were outside the jury room. The record in this case reflects that after the verdict of the jury was returned, the appellant made a motion for a mistrial based upon the fact that the jurors left the room where they were deliberating and went to the restrooms down the hall about fifteen feet from the jury room. The record also reflects that since women have been on juries in Winston County the court has used the grand jury room as a jury room when it was available for the reason that the regular jury room is very small. In this instance after the jury had deliberated for some time, the court was informed that some of the jurors needed to go to the restroom. The court instructed the sheriff to put two deputies in the hall to see that no one contacted the jurors while they went to and from the restrooms. The sheriff testified these instructions were *387 carried out. The restrooms were only a few feet from the door of the jury room, and the restrooms were checked before any jurors were allowed to enter them. The jurors were under the surveillance of a bailiff from the time they left the jury room until the time they returned. The only time they were out of the sight of the bailiff was when they were actually in the restroom. It is clear from the testimony that there were no bystanders in this part of the hall and no one contacted any of the jurors while they were outside the jury room.
Appellant urges that the foregoing circumstances constitute a dispersal of the jury and violate the rule announced in Nicholson v. State, 254 So.2d 881 (Miss. 1971), wherein we stated that he held in Wilson v. State, 248 So.2d 802 (Miss. 1970), that in a capital case the accused has the right to a trial by a duly constituted court which includes a jury which is kept together from the time it is specially sworn to try the case until discharged by the court. In Wilson the jury was allowed to disperse overnight and we held that this could not be done, although the accused consented to such dispersal. However, we pointed out that exceptions had been made to this rule in Cunningham v. State, 94 Miss. 228, 48 So. 297 (1908), and in Haley v. State, 123 Miss. 87, 85 So. 129 (1920). In Cunningham we held that a conviction of murder would not be set aside because one of the jurors separated himself from his fellow juror where it was highly improbable that he communicated with anyone during his absence. In Haley, we held that the temporary separation of a juror in a murder case because of illness was not a ground for a new trial. We pointed out the rule that the jury must be kept together does not apply, even in capital cases, to temporary separation of one or more of the jurors in cases of necessity, where the separating jurors are in charge of or in sight of an officer and are not allowed to communicate with other persons. In the case before us it is clear that the jurors did not communicate with anyone while separated from their fellow jurors. It was not a dispersal of the jury in the sense that any of them were allowed to go their separate ways. We are of the opinion that the trial court was correct in overruling appellant's motion for a mistrial.
Appellant also urges that the trial court was in error in overruling his motion to quash the indictment because he was not afforded a proper preliminary hearing. The record reflects that on the next day after appellant was arrested, an attorney was appointed to represent him. This attorney, after conferring with appellant and with appellant's consent waived a preliminary hearing. Shortly thereafter this attorney was relieved by the court and the present counsel were appointed. A motion to quash the indictment was filed twelve months before appellant was tried and proof was taken on the motion on at least two occasions. The court overruled the motion on each occasion. Appellant now contends that if he had been afforded a proper preliminary hearing, he would have been entitled to bond and that the hearing would have revealed some facts that needed further investigation. Thus, appellant concludes he was denied due process of law. We find no merit in this contention. Appellant was represented by competent counsel and waived preliminary hearing and even if the waiver was not proper, the mere fact that he was not afforded a preliminary hearing without more does not amount to a violation of his constitutional rights and does not vitiate his conviction. The nature and purpose of a preliminary hearing is to determine whether probable cause exists to hold a person to await proper action of the grand jury. Stevenson v. State, 244 So.2d 30 (Miss. 1971); McLelland v. State, 204 So.2d 158 (Miss. 1967). If appellant was entitled to bond pending trial, the remedy of habeas corpus was available to him, but he did not ask to utilize this remedy.
Appellant asserts that the trial court was in error in admitting into evidence *388 the shotgun allegedly used in the killing. The evidence shows that Elijah Miller, the owner of the premises, let his granddaughter Helen Ruth Horton use the house, and appellant was living with her in the house. The record does not reflect that she was in possession of that part of the premises searched without a warrant. The record is clear that Miller was the owner of the premises and the trial court was justified in finding that he consented to the search. Furthermore, we are of the opinion that if it could be said that it was error to admit the shotgun in evidence such error was not prejudicial. There was no doubt that appellant shot Nance with a shotgun and the introduction of the shotgun supposed to have been used in the shooting added nothing to his admission that he shot and killed the deceased. The error, if any in this regard, was harmless beyond any reasonable doubt.
We find no merit in appellant's contention that the trial court was in error in allowing Mrs. Nance to testify concerning statements made by appellant to her. It is contended that this was custodial interrogation and appellant was entitled to not only be warned as required under the Miranda rule, but was also entitled to have his counsel present during the interview. The statements made by appellant to Mrs. Nance were not a result of custodial interrogation as contemplated by Miranda. Mrs. Nance saw appellant working on the courthouse lawn. He was alone and she merely stopped on the sidewalk and inquired of appellant whether her husband lived very long after he was shot. It is understandable that she was interested in knowing whether her husband's death was instantaneous. Upon being asked this question, appellant voluntarily told her he thought Mr. Nance was dead before he left, and he took the gun and billfold and ran because he was scared. This statement was free and voluntary and therefore was admissible in evidence.
We have carefully considered the other errors assigned and find them to be either without merit or harmless beyond a reasonable doubt. The record in this case reveals that appellant was convicted after a fair trial in which he was ably and vigorously defended by competent counsel. The evidence was ample to support the verdict of the jury, and there being no reversible error in this record, this case must be and is affirmed.
Affirmed.
GILLESPIE, C.J., and ROBERTSON, SUGG and BROOM, JJ., concur.