473 So.2d 452 (1985)
Curtis Wayne WINTERS
v.
STATE of Mississippi.
No. 54928.
Supreme Court of Mississippi.
July 24, 1985.
*453 David G. Hill, Ronald W. Lewis, Hill & Lewis, Oxford, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
It is hard to understand just what dark forces would impel a young male of 15 years to stalk, assault and rape an elderly woman who unsuspectingly entered a church building on a hot July Sunday afternoon in broad open daylight, if you will, yet that is the situation we face here. All of the facts save penetration are uncontested and the evidence there is adequate.
Though the case was vigorously defended at trial and commendably so, and has been competently argued on appeal, the questions of law are not inordinately difficult. The trial judge was correct when he denied the defendant's motion to quash the indictment, was within his discretion when he denied defendant's motion for change of venue, was correct when he overruled objections *454 to admission of defendant's confession, was correct when he denied defendant's assorted challenges to the sufficiency of the evidence, and was within his discretion when he denied defendant's motion for a new trial, all of which we explain more fully below. The rape conviction and twenty-five year sentence imposed upon defendant are affirmed.

II.

A.
At about 4:00 p.m. on Sunday, July 11, 1982, Mrs. Adelaide Townes, a 70-year old white female resident of Grenada, remembered that she had forgotten to turn off the loud speaker at the First Presbyterian Church in Grenada when she left that morning. She got in her car and drove to the church and parked across from the door she intended to enter. As she got out of her car, she noticed Curtis Winters, a fifteen year old black male, walking by on the sidewalk. She and Winters did not speak, and she proceeded into the Sunday School Building, down a hall and to the back of the church where she turned off the microphone. She then turned around and came directly back out. No one else was present in the church at the time.
When Mrs. Townes reached the door through which she had entered, Curtis Winters was standing in front of it. Mrs. Townes was startled to see him there, and stopped and asked, "Can I do anything for you?" Winters answered, "Yeah", reached behind him and locked the door, and then walked towards her. As he walked towards her he said, "I have a knife." Mrs. Townes saw the knife at that point but did not know what he did with it after that.
Winters took hold of both of Mrs. Townes' arms between the wrist and the elbow and pushed her back into the hallway to a bench, pulled her down on his knee and then forced her up and into an adjoining Sunday School room. He forced her to the floor and sat on her stomach, pulling her arms back and placing his knees on her arms. She tried to struggle but found herself helpless. With his knees still on her arms, he reached back with one hand and pulled her slip up and her panty hose down. Winters then unzipped his pants and raped her. When he had finished he ran down the hall and exited the same door through which he had entered.
Mrs. Townes left the church immediately thereafter, got in her car and started towards city hall thinking that she would find a policeman. She encountered Bill and Ella Whitten, friends of hers from church, and called out to Ella. After informing the Whittens that she had been raped they went to the police station and from there to the Grenada County Hospital. Dr. Thomas Holden was on call that day and conducted the examination of Mrs. Townes. Mrs. Townes reported to him that she had been raped. Mrs. Townes was not hospitalized, but was given a prescription of an antibiotic to be taken as a prophylaxis against any potential venereal disease. Curtis Winters was arrested the next day by Detective Greg Harris of the Grenada Police Department.

B.
Curtis Wayne Winters was born on January 31, 1967. On July 27, 1982, Curtis Wayne Winters was charged with the rape of Adelaide Horton Townes, a female human being over the age of twelve years, in an indictment returned by the Grenada County Grand Jury.[1] The indictment reflected that the charges were brought under Miss. Code Ann. § 97-3-65 (Supp. 1981).
After a plethora of pretrial motions and proceedings, the case against Curtis Winters was called for trial in the Circuit Court of Grenada County, Mississippi, beginning February 2, 1983. After hearing all the *455 evidence and receiving the instructions of the court and the arguments of counsel, the jury found Winters guilty of rape. On February 9, 1983, the Circuit Court entered its order that Winters be sentenced to the custody of the Mississippi Department of Corrections for a term of twenty-five (25) years.
Thereafter, Winters timely filed a motion for a new trial challenging both the weight and sufficiency of the evidence. On February 25, 1983, the Circuit Court entered its order denying the motion. Winters now appeals to this court.

III.
Prior to trial Winters moved to quash the indictment asserting two grounds: (1) that Mississippi's rape sentencing scheme violates rights said to have been secured to Winters by the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States and (2) that because of his age at the time of the crime, 15, this case should have been remanded to the Grenada County Youth Court.
The equal protection argument  conceded by counsel at oral argument to be somewhat "convoluted"  runs something like this. The statute under which Winters has been prosecuted, Miss. Code Ann. § 97-3-65(2) (Supp. 1984) provides for a maximum punishment of life imprisonment. He notes, however, that the entire Section 97-3-65[2] provides two punishments for the crime of rape depending upon the age of the victim. If the victim is above the age of twelve, the punishment prescribed for juvenile offenders and for adult offenders is the same: life imprisonment or a term of years less than life. Miss. Code Ann. § 97-3-65(2) (Supp. 1984) If the victim is twelve years of age or younger, an adult offender (18 or older) can receive either the death penalty or life imprisonment whereas the punishment for juveniles (such as Winters) is ("such term of imprisonment as the court, in its discretion, may determine." Miss. Code Ann. § 97-3-65(1) (Supp. 1984). Thus on its face the statute, we are told, allows for an irrational gradation of severity of punishment for "essentially identical offenses" and is unconstitutional. It is difficult to understand how Winters has any right to complain of such irrationality, if indeed the statute contains such, in that the penalty to which he has subject was life or less no matter what the victim's age.
The flaw in counsel's argument, if we understand it, exists in his basic premise that the rape statute arbitrarily provides for two separate and unequal punishments for juvenile offenders "charged with committing essentially identical offenses." (Appellant Brief, p. 23). The fact that the legislature did not consider rape of an individual under twelve and rape of an individual over twelve to be "essentially identical offenses," is evidenced by the amendment of the rape statute which the legislature approved in April, 1977 changing the old *456 rape statute from a single section format to a statute having two distinctive subsections. Subsection (1) addresses the rape of a child under the age of twelve and sets forth the punishment for such crime, subsection (2) sets forth the statutory penalty for rape of a female over the age of twelve. Under the statutory scheme, however, a person such as Curtis Winters, a 15 year old, subjects himself to the same potential penalty  a term of imprisonment for life or less (Section 97-3-65(1) authorizes in the case of defendants aged 13-17 "such term of imprisonment as the court, in its discretion, may determine" which grammatically and therefore legally authorizes a term of imprisonment for life or less)  regardless of the age of his victim. The discriminatory vice counsel would have us find in the statute is, to say the least, evasive.
In the final analysis, defining crimes and prescribing punishments are exclusively legislative functions as a matter of constitutional law. "[T]he authority to say what constitutes a crime, and what punishment shall be inflicted is in its entirety a legislative question ..." Gabriel v. Brame, Sheriff, 200 Miss. 767, 773, 28 So.2d 581, 582 (1947). See also McBrayer v. State, 467 So.2d 647, 648 (Miss. 1985).
As Curtis Winters was not classified in a manner that burdened his rights within the criminal justice system, there is no equal protection violation present and this assignment of error is without merit.
The allegation of youth court jurisdiction is also without merit. As this offense is one that is potentially punishable by life imprisonment, it is expressly excepted from youth court jurisdiction under Miss. Code Ann. § 43-21-105(j). See generally Carter v. State, 334 So.2d 376 (Miss. 1976); Davis v. State, 204 So.2d 270 (Miss. 1967); Bullock v. Harpole, S St. Penitentiary, 233 Miss. 486, 102 So.2d 687 (1958).
The motion to quash the indictments was properly overruled.

IV.

A.
Prior to trial Winters filed a motion for change of venue, asserting that there was sufficient adverse prejudgment of the case against him and ill will toward him generally so that he could not receive a fair trial in Grenada County. At the pretrial hearing on the motion, the State offered thirteen witnesses drawn from various segments of the Grenada County community each of whom in substance offered his opinion that Winters could receive a fair trial in that county. Winters called only two witnesses to show otherwise, one of whom was Winters' original attorney, Kenneth O'Neal, the Grenada County Public Defender, who had testified that he sought leave to withdraw as counsel for Winters because of threats he had received and because of the substantial prejudice in the community against Winters. It should be noted that the motion for change of venue was heard on January 27, 1983, some 200 days after the commission of the offense charged in the indictment. The evidence reflected that there was quite a bit of talk in the few days after the offense (and three other similar and relatively contemporaneous crimes with which Winters was also charged) but that interest had dissipated substantially in the intervening months. In any event, at the conclusion of the hearing, the trial judge denied the motion for change of venue.
We recognize and follow in this regard a procedure set forth by statute. Miss. Code Ann. § 99-15-35 (1972). That statute suggests, as a procedural requisite to the authority of the court to entertain a motion for change of venue, that the defendant file in support the affidavits of two credible persons supporting the claim that the defendant can not get a fair trial in the particular county. Two such affidavits were attached to Winters' motion, and we have long recognized that where this is done the accused is deemed to have presented a prima facie showing for a change of venue which the state must meet by proof. McGee v. State, 200 Miss. 350, *457 359, 26 So.2d 680, 683 (1946); Wexler v. State, 167 Miss. 464, 473, 142 So. 501, 503 (1932). In this case the State went forward with thirteen credible witnesses in the context of which we can only disturb the trial judge's denial of a change of venue if we find that this ruling on the record "has been a clear abuse of discretion". Billiot v. State, 454 So.2d 445, 454-55 (Miss. 1984); Saucier v. State, 328 So.2d 355, 357 (Miss. 1976).
In reviewing the assigned error that a trial judge has abused his discretion in denying a change of venue, we look to the completed trial, particularly including the voir dire examination of the prospective jurors, to determine whether the accused received a fair trial. Billiot v. State, 454 So.2d 445, 455 (Miss. 1984); Franklin v. State, 189 Miss. 142, 158-59, 196 So. 787, 789 (1940). Our problem here is that no record of voir dire was made by the court reporter. It is too well settled to require extensive citation of authority that an appellant is responsible for bringing to our attention and presenting to this court a record of trial proceedings sufficient to undergird his assignments of error. See, e.g., Yates v. State, 342 So.2d 312, 316 (Miss. 1977); Shelton v. Kindred, 279 So.2d 642, 644 (Miss. 1973). Defense counsel offers no excuse for his failure to present a record of the voir dire examination of jurors other than that he (mistakenly) assumed that the proceedings were being taken down by the reporter when in fact they were not. This is insufficient excuse.
Though the voir dire was not transcribed, the trial judge noted that seven prospective jurors indicated on voir dire that they had prejudged the case. In this context Winters renewed his motion for a change of venue and the motion again was denied. Therefore, eschewing any exalting of form over substance, we have carefully reviewed the trial record such as it is and have compared the venue question here with that presented in other cases. Suffice it to say that in recent years we have refused to disturb denials of change of venue in cases where the accused made a far stronger showing of local community prejudice than appears in the record in the case at bar. See, e.g., West v. State, 463 So.2d 1048, 1054 (Miss. 1985); Billiot v. State, 454 So.2d 445, 454-55 (Miss. 1984). The assignment of error is denied.

B.
Regarding the transcript, we want to emphasize how important it is that court reporters take down proceedings on voir dire. Whether those proceedings are transcribed and made a part of the record on appeal is another matter. If there is no assignment of error relating to the voir dire proceedings, we would assume that counsel on each side would have the good judgment to agree that this part of the trial proceedings not be included in the record on appeal. The problem is that no one knows whether the voir dire proceedings will be needed on appeal until after the fact; hence, court reporters simply must take down all such proceedings so that they have the capacity to provide the parties and this Court on appeal with a verbatim transcript of all that transpired on voir dire examination of the prospective jurors.
We recognize that former custom dictated that voir dire proceedings not be taken down by the court reporter. Old habits, particularly bad ones, often die hard. This is such a habit which seems to have been cured in the context of capital murder cases, primarily because of the importance of issues raised so often under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and progeny. The bad habit seems not to have been wholly eradicated in non-capital cases.
This Court has emphasized at least three times in the past two years the importance of the court reporter taking down all facets of a trial and having the capacity to furnish a transcript on appeal regarding any aspect of the trial proceedings. Kelly v. State, 463 So.2d 1070, 1073 (Miss. 1985); City of Mound Bayou v. Roy Collins Construction Company, Inc., 457 So.2d 337, 343 (Miss. 1984); Dorrough v. State, 437 So.2d 35, 37 (Miss. 1983) ("especially the voir dire *458 examination"). We hope this opinion will be read as our saying "We really mean it".

V.
Winters next challenges admission of the confession he gave to Officer Harris the day after his arrest. The facts here are a touch different from the usual.
On July 12, 1982, Winters was interrogated by Officer Greg Harris. It is clear that Harris adequately advised Winters of his Miranda[3] rights and that Winters waived those rights. Indeed, he executed a written acknowledgement and waiver of those rights at 5:31 p.m. on July 12, 1982. Thereupon Officer Harris proceeded to interrogate Winters and to preserve the contents of the interrogation via an audio tape recording.
The tape recorded confession was made available via discovery to defense counsel who objected to its introduction into evidence on two grounds, first, that the confession related to other crimes (Winters was at the time under investigation for the commission of at least two other unrelated rapes and a kidnapping) and, second, that there was an unexplained fifteen second gap near a rather important part of the interrogation of Winters concerning the rape of Mrs. Townes. Because of these circumstances, the trial judge sustained Winters' objection to the introduction of the tape recording. Officer Harris was allowed, however, to state verbally from the witness stand before the jury his recollection of the confession given by Winters  it being then January 31, 1983, and the confession having been given on July 11, 1982.
On this appeal Winters argues that admission of the confession in any form was error. He urges that the taped confession was the "best evidence", and it having been suppressed, no other evidence of the confession should be allowed. Our case law is to the contrary.
Where proof of a conversation has been of two different kinds, namely, a recording thereof and testimony by witnesses who overheard it, it has been argued that both recording and testimony were the best evidence; however, the courts have not relegated either to a secondary position, but have held that both types of evidence are equally competent primary evidence, and that one is not to be excluded because of the existence of the other.

Sparks v. State, 412 So.2d 754, 756 (Miss. 1982);
Cf. Turner v. State, 415 So.2d 689, 691 (Miss. 1982) (admitting testimony of the underlying transaction which was the subject of a tape recording which the trial court suppressed for non compliance with discovery rules). We have recently recognized in a capital case that the confession of the accused may be placed before the jury by the officer's verbal in court testimony of his memory of what the accused said. Neal v. State, 451 So.2d 743, 756 (Miss. 1984). Here there is no suggestion that the State had impermissibly withheld anything in the face of Winters' discovery request, nor that defense counsel was otherwise surprised by the content of the confession testified to by Officer Harris.
It bears emphasis that Winters makes no charge here that he was not fully advised of his Miranda rights nor is there any serious suggestion advanced by Winters that, under the totality of the circumstances, there was no knowing or voluntary waiver of Winters' privilege against self-incrimination. Jones v. State, 461 So.2d 686, 696-97 (Miss. 1984); Depreo v. State, 407 So.2d 102, 106 (Miss. 1981); Lee v. State, 338 So.2d 399, 401 (Miss. 1976). Our independent review of the record makes clear that Winters was adequately Miranda warned and that he thereafter waived those rights  intelligently, knowingly and voluntarily. Jones v. State, 461 So.2d 686, *459 696 (Miss. 1984); Neal v. State, 451 So.2d 743, 753 (Miss. 1984).
Winters further argues that the confession was obtained in violation of rights said to have been secured to him by our Youth Court Act, Miss. Code Ann. § 43-21-311(4) (1972) which provides that no youth may be interrogated in the absence of counsel or his guardian ad litem. This argument fails in that the offense charged, rape, carries a potential life sentence, vesting exclusive jurisdiction of the matter in the circuit court and rendering the Youth Court Act wholly inapplicable. Miss. Code Ann. § 43-21-105(j) (Supp. 1984); Carter v. State, 334 So.2d 376, 377 (Miss. 1976).
The assignment of error is denied.

VI.
Winters tested the sufficiency and weight of the evidence against him with various pre-verdict and post-verdict motions. At the end of the State's case, Winters moved for a directed verdict of acquittal. Thereafter, before the case was submitted to the jury Winters requested that the jury be instructed peremptorily to return a verdict of not guilty. Following the jury's verdict, Winters filed a motion for a new trial which, by its terms, is in effect a motion for a judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial. These challenges to the sufficiency and weight of the evidence are renewed on this appeal.

A.
Here Winters tests the legal sufficiency of the evidence supporting the verdict of guilty. Where a defendant has so moved, the trial court must consider all of the evidence  not just the evidence which supports the State's case  in the light most favorable to the State. Williams v. State, 463 So.2d 1064, 1067 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984); Sadler v. State, 407 So.2d 95, 97 (Miss. 1981). The credible evidence which is consistent with the verdict must be accepted as true. Spikes v. State, 302 So.2d 250, 251 (Miss. 1974).
The State must be given the benefit of all reasonable inferences that may be drawn from the evidence and which are consistent with the verdict. Glass v. State, 278 So.2d 384, 386 (Miss. 1973). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required. Williams v. State, 463 So.2d at 1067, May v. State, 460 So.2d at 781. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand. Williams v. State, 463 So.2d at 1068; May v. State, 460 So.2d at 781.
In other words, once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Fairchild v. State, 459 So.2d 793, 798 (Miss. 1984); May v. State, 460 So.2d at 781; Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983).
The core of Winters' point here is his contention that the State's proof fails on one of the essential elements of the crime of rape, i.e., penetration. No other part of the State's factual scenario of what Winters is said to have done on the afternoon of July 11, 1982, is contested. More to the point, no other element of the offense charged is seriously denied.
To establish the offense of rape, the State must prove that there was "some penetration" of the victim's vagina by the defendant's penis. Davis v. State, 406 So.2d 795, 801 (Miss. 1981); Lang v. State, *460 230 Miss. 147, 158, 87 So.2d 265, 268 (1956). We have recognized that only "slight penetration" need be shown. Jackson v. State, 452 So.2d 438, 440 (Miss. 1984).
The victim, Mrs. Townes, on direct examination, testified that "he raped me". In answer to the question, "Did he place his male sex organ in your female sex organ?" she answered, "Yes."
On cross-examination Mrs. Townes was questioned about a prior statement,
Q. If you were said to have said, "I honestly don't know," in response to the question of whether there was penetration by the male sex organ, would you deny that was what you said?
A. No, I would not ... I would also have to say that the word "penetration," ... I was not clear on exactly what the doctor meant or what you meant when you said that.
Ella Whitten, who drove Mrs. Townes to the hospital, testified that Mrs. Townes said, "Ella, I've been raped."
Dr. Thomas Holden, the physician who treated Mrs. Townes on the afternoon of July 11, 1982, testified that Mrs. Townes seemed to be reasonably composed, rational, coherent and in control of her senses. Dr. Holden's examination disclosed that the area outside the vagina was red and slightly swollen. There was no sign of any laceration of bleeding. Dr. Holden further testified that there was no evidence inside the vagina of sexual intercourse. No sperm was present. According to his notes Mrs. Townes said she wasn't sure of the "degree of insertion." On cross-examination Dr. Holden testified that the slight swelling and slight redness were not necessarily caused by sexual penetration or attempted sexual penetration.
The issue of penetration was addressed in the testimony of Officer Harris who recounted before the jury the confession made by Winters shortly after his arrest. With respect to that confession, Officer Harris on direct examination testified that Winters said that he (Winters)
unzipped his pants and had sexual intercourse without the victim's permission, and then that he had a shirt on, two shirts, one shirt was torn, and a snap had came off of his pants and once he had got through having sex with her that he left running out the door because he thought that she may call the police and he went on towards his home.
Q. Did the Defendant [Winters] say anything in addition to just having sex with her? Did he say anything about having sex with her without her permission?
A. Yes, sir.
On cross-examination, the following colloquy took place between Officer Harris and defense counsel:
Q. Well, 
A. He made a statement that he had sex with her without her permission.
Q. That's not what I asked. That's not what I asked you.
A. Ask me again.
Q. I asked you about penetration.
A. I can't recall asking a statement with reference to the word "penetration".
Then on redirect examination, Officer Harris' testified further:
Q. What, if any, question did you ask to which the Defendant responded that he had had sex with Mrs. Townes?
A. None.
* * * * * *
Q. Before he made that statement what question had you asked him?
A. None about the having of sex.
Q. I know not specifically, but what question was he responding to when he said, "I had sex with Mrs. Townes"?
A. I would have to refer to the statement.
Q. You may.
A. (Witness looking at statement.) He was responding to the question of explain in his own words what happened.
BY MR. SYNDER:
No further questions.
*461 Winters did not take the stand at trial and testify in his own defense.
Penetration being the only issue with respect to which Winters challenges the sufficiency and weight of the evidence, our task is to apply the general premises stated at the outset of this section of this opinion to the evidence and testimony we have just recited. When we do this we may only state that the trial judge correctly denied Winter's motion for a directed verdict and request for a peremptory instruction as well as so much of his post-trial motion as requests entry of judgment of acquittal notwithstanding the verdict of the jury. See Bardwell v. State, 155 Miss. 711, 715, 125 So. 85, 86 (1929).

B.
The motion for a new trial is somewhat different. That motion is addressed to the sound discretion of the trial court. Williams v. State, 463 So.2d at 1068, Fairchild v. State, 459 So.2d at 798-99, Neal v. State, 451 So.2d 743, 760 (Miss. 1964). Under our practice, the trial court, in its discretion, may grant a new trial if it deems such is required in the interest of justice or if the verdict is contrary to law or the weight of the evidence. Rule 5.16, Unif.Crim.R.Cir.Ct.Prac.; Neal v. State, 451 So.2d at 760, Fairchild v. State, 459 So.2d at 799. Having due consideration for the controlling substantive rules of law and their application to the evidence recited at the outset of this opinion, and regard as well for the discretionary nature of the motion for a new trial and the concomitant limitations upon our scope of review, it appears clear that the trial judge acted well within his discretion when he denied the motions of Curtis Wayne Winters for a new trial.
The assignment of error is denied.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.J., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Because the offense with which Winters has been charged carries a maximum punishment of life imprisonment, see Miss. Code Ann. § 97-3-65(2) (Supp. 1984), this proceeding is beyond youth court jurisdiction, notwithstanding Winters' age. Miss. Code Ann. § 43-21-105(j) (Supp. 1984). See Carter v. State, 334 So.2d 376, 377 (Miss. 1976); Davis v. State, 204 So.2d 270, 278 (Miss. 1967).
[2] § 97-3-65. Rape; carnal knowledge of female under twelve years of age, or, being over twelve, against her will.

(1) Every person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a female child under the age of twelve (12) years, upon conviction, shall be sentenced to death or imprisonment for life in the state penitentiary; provided, however, any person thirteen (13) years of age or over but under eighteen (18) years of age convicted of such crime shall be sentenced to such term of imprisonment as the court, in its discretion, may determine. In all cases where the female child is under the age of twelve (12) years it shall not be necessary to prove penetration of the female's private parts where it is shown the private parts of the female have been lacerated or torn in the attempt to have carnal knowledge of her.
(2) Every person who shall forcibly ravish any female of the age of twelve (12) years or upward, or who shall have been convicted of having carnal knowledge of any female above the age of twelve (12) years without her consent, by administering to her any substance or liquid which shall produce such stupor or such imbecility of mind or weakness of body as to prevent effectual resistance, upon conviction shall be imprisoned for life in the state penitentiary if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment the court shall fix the penalty at imprisonment in the state penitentiary for any term as the court, in its discretion, may determine.
[3] See Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966); Rule 1.03, Unif.Crim.R. of Cir.Ct.Prac.