ROBERTSON, Justice,
for the Court:
I.
Today’s appeal challenges that we take seriously that constitutionally-mandated and often controversial rule that no person shall be convicted of a crime save the evidence establish his guilt beyond a reasonable doubt. The case for the prosecution in this sale of cocaine case rests solely on the eyewitness identification of a paid confidential informant. Major discrepancies between the description the informant gave immediately after the sale — and stood by at trial — and the Defendant’s undeniable physical appearance generate a reasonable doubt which no fair-minded juror could ignore.
We reverse and render.
II.
Herbert Ashford, age thirty-seven, lives in Meridian. He has never been convicted of a felony. The afternoon of July 25, 1989, was a hot one. Ashford was visiting some friends at the Brooksville Garden Apartments in Starkville. A number of persons were milling around outside, dressed lightly, their number estimated between a half a dozen and two dozen. Ash-ford says he was outside Building No. 8 drinking beer, talking to some girls, when Mississippi Bureau of Narcotics (MBN) Agent Charlie McVey, whom Ashford knew, drove by and called out to him that he could not have the beer outside. Indisputably, Ashford is six feet tall, and he says at the time he weighed about 184 pounds.
Some six weeks later — on September 6, 1989, to be exact — MBN Agent Mike Ar-ledge arrested Ashford at the same location and charged him with the sale of cocaine. It seems that several months earlier Arledge, McVey, and Todd Salmon, a narcotics officer with the Starkville Police Department, had determined that there was substantial illegal drug activity at the Brooksville Garden Apartments. On July 25, the three officers decided that Thetret Murray, a paid confidential informant who had previously worked the Columbus area, should be sent to the apartments to try to make a buy. Murray was equipped with a body microphone, and he drove to the apartments alone. Murray says he proceeded to Building 8, where a number of people were standing around. He says a black male, about five feet six inches tall and weighing about 130 pounds, wearing greenish-blue knee length shorts, white tennis shoes and a white tee shirt, approached him.
Murray asked about getting some “weed,” meaning marijuana. The man said there was none but that he could get him a quarter’s worth of rock. The man went around the building and returned in a few moments with a “thirty dollar rock,” which Murray purchased. Murray purchased the rock with MBN marked funds — two twenty dollar bills — for which he received ten dollars change. As Murray walked away, he described into his body microphone his seller as being a black male, wearing a white tee shirt, white tennis shoes, and greenish-blue knee length shorts. Murray got into his car and drove away. Hearing this, McVey, Arledge and Salmon drove by the area some two to five minutes later, at which time McVey saw Ashford and had the brief conversation with him. McVey says Ashford fit the clothing description Murray had given.
A short time later, Murray met with the three agents and delivered the cocaine to them, and it was in turn sent to the crime lab for chemical analysis. More importantly, Murray made an unequivocal report that his seller was approximately five feet six inches tall and weighed 130 pounds. MBN paid Murray $100.00 for his services.
Murray stuck by this description through trial — some six months later — when it appeared that Ashford, in fact, was six feet tall and weighed 184 pounds. Notwithstanding, Murray made a positive in-court identification. McVey, who had known Ashford for some time, attempted to rehabilitate Murray regarding his estimate of Ashford’s weight, McVey saying that when *1281 he saw Ashford on the hot July afternoon, he was more slender than he was at trial, that he was just skin and bones. At trial, defense counsel asked Murray to stand beside Ashford. Murray described himself as being five feet seven inches tall, weighing 155 pounds.
No other person witnessed the sale, nor was there any physical evidence linking Ashford to it. The marked MBN funds were not recovered nor was any other evidence offered at trial from which it might be inferred that Ashford was a drug dealer. Notwithstanding, the jury convicted Ashford, and the Circuit Court sentenced him to ten years imprisonment. Ashford appeals, challenging inter alia the sufficiency of the evidence against him.
III.
Ashford’s issue presents a question of law, the parameters of which are well settled. We are to consider all the evidence in the light most favorable to the prosecution, Davis v. State, 530 So.2d 694, 703 (Miss.1988); Singleton v. State, 518 So.2d 653, 655 (Miss.1988); Winters v. State, 473 So.2d 452, 459 (Miss.1985); May v. State, 460 So.2d 778, 781 (Miss.1988), accepting all credible evidence consistent with the verdict as true. Winters, 473 So.2d at 459; Spikes v. State, 302 So.2d 250, 251 (Miss.1974). We must accept as well all reasonable inferences which may be drawn from the evidence and which are consistent with the verdict. Pritchett v. State, 560 So.2d 1017, 1019 (Miss.1990); May, 460 So.2d at 781; Winters, 473 So.2d at 459; Glass v. State, 278 So.2d 384, 386 (Miss.1973). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty, we must reverse and order the defendant discharged. Gray v. State, 549 So.2d 1316, 1318-19 (Miss.1989); Winters, 473 So.2d at 459; Williams v. State, 463 So.2d 1064, 1067 (Miss.1985); May, 460 So.2d at 781. If, however, there is substantial evidence consistent with the verdict, evidence which is of such weight and quality that, keeping the burden of proof of beyond a reasonable doubt in mind, “fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions,” the jury’s verdict should be allowed to stand. Butler v. State, 544 So.2d 816, 819 (Miss.1989); Winters, 473 So.2d at 459; Williams, 463 So.2d at 1068; May, 460 So.2d at 781. Put another way,
[o]nce the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.
Fairchild v. State, 459 So.2d 793, 798 (Miss.1984). See also, Winters, 473 So.2d at 459; May, 460 So.2d at 781.
All of this is quite familiar, but what is crucial today is that part of our standard of review requiring that we respect the beyond-a-reasonable-doubt proof burden the prosecution bears. The United States Supreme Court has held that burden a mandate of the Constitution. See e.g., Yates v. Aiken, 484 U.S. 211, 214, 108 S.Ct. 534, 536, 98 L.Ed.2d 546, 552 (1988); Jackson v. Virginia, 443 U.S. 307, 313-14, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560, 569-70 (1979); In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970); see also, Barnette v. State, 481 So.2d 788, 791 (Miss.1985); Wood v. State, 354 So.2d 1122, 1124 (Miss.1978). That minimum quantum of proof we demand, before a court may lawfully find a fact in a given setting, is a function of the level of confidence we insist upon in the correctness of the outcome. Colorado v. New Mexico, 467 U.S. 310, 315-16, 104 S.Ct. 2433, 2438, 81 L.Ed.2d 247, 254 (1984); Norris v. Norris, 498 So.2d 809, 813 (Miss.1986); In re M.R.L., 488 So.2d 788, 790 (Miss.1986). Our law requires proof in criminal cases beyond a reasonable doubt because, more so than in any other setting, we find conviction of the innocent intolerable. It is an unfortunate reality that enforcement of such a standard will at times free the guilty. The point for the moment is that we must enforce the *1282 standard consistently lest we enhance the risk the constitutional mandate seeks to avoid, namely, conviction of the innocent.
Today’s precise question is whether, on the evidence before us, fair-minded jurors may have found Ashford guilty of the sale of cocaine on the afternoon of July 25, 1989, and may have so found beyond a reasonable doubt. The only witness who identified Ashford as engaging in anything remotely resembling such a sale was paid confidential informant Thetret Murray. Murray described the man who sold to him as being five feet six inches tall and weighing 130 pounds and never backed off. Six months later at trial, without doubt Ash-ford was six feet tall and weighed 184 pounds. It is possible and indeed likely that witnesses will miss a person’s height by a few inches and may miss a person’s weight by a few pounds, maybe even ten or twenty. It is even possible that a person’s weight may change over the course of a six-month period between the offense and trial. It is not common, however, that a man, familiar with his own height and weight, will look at another — much taller and much heavier — and estimate a shorter height and a lesser weight.
The discrepancy in Murray’s description generates considerable doubt. This is particularly so in that Murray describes his seller as being smaller than himself, while in fact Ashford was a much larger person both in terms of height and weight. This discrepancy, coupled with the absence of the sort of evidence we customarily encounter in cases of this sort — the corroborating testimony of a professionally trained narcotics agent plus physical evidence in the form of marked MBN funds — can only yield a reasonable doubt of Ashford’s guilt.
Without question, there is evidence pointing to Ashford’s guilt. There is Murray’s positive in-court identification. Ashford does not deny he was at Apartment No. 8 on the afternoon in question and Officer McVey describes him as wearing clothes not unlike those Murray says his seller was wearing. We have said before and often, that it matters not that the defendant may be guilty or even that he is probably guilty. For better or for worse, the law demands that no jury may convict unless the defendant be guilty beyond a reasonable doubt. See, e.g., Murphy v. State, 566 So.2d 1201, 1206 (Miss.1990); Hemphill v. State, 304 So.2d 654, 655-56 (Miss.1974); Matula v. State, 220 So.2d 833, 836 (Miss.1969). We put it well almost a half century ago.
The question before us is not whether the defendants are in fact guilty or are probably guilty, but whether the State has made out beyond a reasonable doubt a case sufficient to withstand the weight of testimony consistent with innocence. The doubt that reasonable men engaged in a search for truth could safety accept and act upon the evidence to a moral certainty of guilty must be resolved in favor of the defendant.
Ewing v. State, 9 So.2d 879, 880 (Miss.1942) (quoted in Mitler v. State, 198 Miss. 277, 283, 22 So.2d 164, 166 (1945)).
The law demands that we reverse when we are confronted with a case where no reasonable juror could have found the defendant guilty beyond a reasonable doubt. Murphy v. State, 566 So.2d at 1205-06; Carol v. State, 540 So.2d 1330, 1333 (Miss.1989). Because the prosecution’s only eyewitness was far off base in his physical description, we regard today’s such a case.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., dissents with separate written opinion joined by HAWKINS, P.J.