IN THE COURT OF APPEALS 7/15/97

OF THE

STATE OF MISSISSIPPI

NO. 94-KA-01196 COA

LEROY MAGEE A/K/A LEROY MAGEE, JR.

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. JAMES E. THOMAS

COURT FROM WHICH APPEALED: HARRISON COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

WOODROW W. PRINGLE, III

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: JEFFREY A. KLINGFUSS

DISTRICT ATTORNEY: MARK WARD

NATURE OF THE CASE: CRIMINAL--TRANSFER OF A CONTROLLED SUBSTANCE, ROCK COCAINE, AS A HABITUAL OFFENDER

TRIAL COURT DISPOSITION: JUDGMENT OF APPELLANT'S GUILT OF THE TRANSFER OF A CONTROLLED SUBSTANCE AND SENTENCED TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION AS A HABITUAL OFFENDER

MOTION FOR REHEARING FILED:7/22/97

CERTIORARI FILED: 10/6/97

MANDATE ISSUED: 12/11/97

BEFORE BRIDGES, C.J., COLEMAN AND PAYNE, JJ.

COLEMAN, J., FOR THE COURT:


Pursuant to the jury's verdict of guilty, the Circuit Court of Harrison County entered its final judgment of Leroy Magee, Jr.'s guilt of the transfer of a controlled substance, in which final judgment, the trial judge sentenced him to serve thirty years in the custody of the Mississippi Department of Corrections under Section 99-19-81 of the Mississippi Code of 1972, as amended, said sentence being without hope of parole or probation. The trial judge denied Magee the hope of parole or probation because it also determined that he had been previously convicted at least twice of felonies upon charges separately brought and arising out of separate incidents at different times, pursuant to which Magee had been sentenced to separate terms of one year or more in the state penitentiary in each case. Leroy Magee has appealed *in forma pauperis* from the trial court's final judgment of his guilt of the transfer of a controlled substance to present two issues for this Court's review and resolution. However, we affirm.


## I. Facts

On July 18, 1993, Greg Conerly, a Gulfport police officer bought a twenty-dollar "rock" of crack cocaine from a male whom he later identified from a "mug" shot as Magee. Conerly had encountered Magee as Magee stepped out into the street in the Gaston Point area of town as Conerly drove a 1988 black Toyota pickup truck down that street. Conerly stopped his truck and motioned for Magee to come over to his truck. Magee obliged Conerly's request and then got in Conerly's pickup. Conerly began driving his pickup, the two exchanged greetings, and Magee asked Conerly what he wanted. Conerly replied that he wanted "a twenty cent piece." Magee's response was to "pull out a piece of rock cocaine" and hand it to Conerly, and Conerly then gave Magee twenty dollars of the City of Gulfport's monetary funds. Conerly then drove around the block and "dropped [Magee] back at

where [he] actually picked him up."

Conerly was wearing a "body wire" that allowed his colleagues on the Gulfport Police Department, Sergeant Jeff Michel and another officer, who were parked in an alleyway approximately three blocks from the locale of the transaction, to monitor Conerly's conversation with this particular purveyor of crack cocaine. After he had completed his purchase of the crack cocaine, Conerly described the seller and the clothing he was wearing, which description the body wire transmitted to Sergeant Michel. Conerly described Magee as "a black male, approximately 6 foot in height, weighing 170 pounds, black hair, brown eyes, had a gold chain, red hat, green striped shirt, long green-striped shorts, red and black sneakers."

Sergeant Michel then drove to the area in which Conerly had purchased the rock, where he immediately spotted a man who matched Conerly's description. Michel recognized Magee as soon as he spotted him because he had encountered Magee two days earlier in front of Cohea's Lounge, an establishment located four or five blocks west of where Conerly met Magee. Michel and other officers were performing "street level interdiction" the night that he met Magee for the first time at Cohea's Lounge. When he had first met Magee in front of Cohea's Lounge, Michel was dressed in his police uniform. Magee had told Michel his name on that occasion. Magee had violated no law the night that Michel saw him in front of Cohea's Lounge. After Conerly made his buy, he returned to the Gulfport police station where he identified Magee as the man who had sold him the rock as they rode in his pick-up earlier that same afternoon from a "mug" shot taken in 1990 when Magee had been arrested on several charges of burglary.

One week later, on July 25, 1993, Conerly again purchased a rock from Magee; but to avoid blowing Conerly's cover, who continued to make street-level, undercover buys of controlled substances until August 27, Magee was not arrested until that same date, August 27, 1993, on an affidavit which had been executed two days earlier on August 25, 1993.

## II. Trial

A Harrison County grand jury subsequently indicted Magee on the charge of transferring a controlled substance in violation of § 41-29-139(a)(1) of the Mississippi Code as a habitual offender pursuant to § 99-19-81 of the Mississippi Code. We have already noted the outcome of that trial, but to analyze and to resolve Magee's issue that the jury's verdict of his guilt of the transfer of a controlled substance was against the overwhelming weight of the evidence, we find it appropriate to review in some detail the testimony of Officer Conerly and Sergeant Michel.

During cross-examination of Officer Conerly, Magee's counsel produced a picture about which he asked Conerly if he could identify its subject. Conerly identified the subject of the photograph as the defendant, Leroy Magee. On Magee's motion, the trial judge admitted the picture into evidence. In that picture, Magee was wearing a blue jersey on which the word "button" was printed in black letters. Only the upper half of Magee's torso was included in the picture, so the color and length of Magee's pants were not shown in the picture. This picture of Magee could hardly have been taken shortly after he sold a rock of crack cocaine to Conerly on July 18, 1993, because in that picture Magee was wearing a blue tank-top jersey rather than the green-striped shirt which Conerly had described to Sergeant Michel when he recited his description which we earlier quoted in this opinion.

Officer Conerly testified on cross-examination that he did not know when this picture was taken and that he did not know whether a picture was taken of Magee on July 18, 1993, the date of his first purchase of a rock from him. He also testified that he had first seen this particular picture "on another occasion."

Conerly testified that Magee was dressed as he was portrayed in the picture when he bought the second rock of crack cocaine from Magee on July 25, 1993. He then explained without objection from Magee's counsel that this picture had been taken, not on July 18, the date of the first sale, but instead one week later on July 25, after he had made the second buy of crack from Magee. For reasons that will become apparent, it then became necessary for Conerly to explain from what picture he had identified Magee after his first purchase from him on July 18. Conerly explained that the picture from which he identified Magee after his first buy on July 18 was a "mug" shot which had been taken of Magee after he had been arrested on several burglary charges back in 1989.[1] Conerly also established under Magee's cross-examination that whereas he had prepared a narcotics buy information sheet for his buy from Magee on July 18, which the State had produced for Magee, there was not a narcotics buy information sheet available for the second buy which he had made from Magee one week later on July 25. Had there been a narcotics buy information sheet for the July 25 buy, it would have contained the description of Magee's clothing just as the narcotics buy information sheet for the July 18 buy contained the description of his clothing which we earlier related in this opinion.

Sergeant Jeff Michel was the State's next witness. During Magee's cross-examination, Michel testified that while he found Magee within twenty minutes of Magee's sale to Conerly at the location where Conerly bought the rock of crack cocaine and recognized him from his earlier encounter with him at Cohea's Lounge, he did not take a picture of Magee that day. Michel acknowledged that "sometimes" pictures of the sellers of controlled substances are taken to facilitate their identification much later when they are tried on the crimes for which they have been charged. Michel next acknowledged that he had prepared the detective investigative reports of the two purchases of rock cocaine which Conerly had made from Magee on July 18 and 25, after which on Magee's motion, copies of both detective investigative reports were admitted into evidence by the trial court.

Michel's detective investigation report of the July 18 transaction concluded with the following sentence:

Photographs were taken of Leroy Magee on the scene and shown to undercover police officer Conerly, at which time he positively ID'ed suspect as Stump.


Michel then admitted that he had taken the picture of Magee dressed in the blue tank-top jersey which the trial court had admitted into evidence on Magee's motion. Magee's counsel next queried Michel about his detective investigative report for the July 25 transaction between Magee and Conerly. Michel admitted that his detective investigative report for the July 25 transaction did not reflect that any picture had been taken of Magee on July 25. Magee's counsel concluded his cross-examination of Michel with the following question, to which Michel gave the following answer:

Q. Okay. And as to any confusion as to when Exhibit 1 [the picture of Magee in the blue, tank-top jersey] was taken, the first time to your knowledge that any claim was made that it was taken other

than July 18, 1993 was today's date; isn't that true? That is the first time anybody claimed that that photograph was taken another date other than July 18th?

A. To my knowledge, yes, sir.

On redirect examination, without specifically identifying it as a "mug" shot or connecting it in any way with Magee's previous burglary convictions, the State asked Michel if the picture by which Conerly identified Magee was the picture which the trial judge and counsel for Magee -- but not the jury -- knew to be the mug shot. Michel replied that it was the "mug" picture which he had shown Conerly back at the police station after Conerly had made the buy from Magee. The State then proceeded to question Michel about the "tank-top" picture of Magee as follows:

Q. When was that picture taken?

A. July 25th, '93.

Q. By whom?

A. By me.

Q. Where was the defendant?

A. In front of a residence located directly west of the Friendly Store at Genevieve and Old Pass Road in the city limits of Gulfport.

Q. And in relation to where the defendant is in that picture, where was he when you drove by after the first sale on July 18th of 1993?

A. Exact same location.

Q. All right. And what caused you to take that photograph?

A. We had just purchased a second time, with Greg Conerly, cocaine from the subject.

Q. All right. So all photographs that you have are the same individual?

A. Yes, sir.

Q. That are in evidence in this case that have been referenced in this case, they are all of Leroy Magee, Junior?

A. Yes, sir.

Q. And there is no doubt in your mind that the individual seated at the defense table is the individual that you saw on those two separate occasions?

A. No doubt.

Still later, Michel testified that he had made a mistake when he wrote the detective investigative report for the July 18 transaction between Conerly and Magee. He stated, "I confused the two days on when I took the picture." After both the State and Magee had concluded their exhaustive examination of Michel, the trial court asked him when he had completed the two detective investigative reports for the July 18 and 25 transactions, to which Michel replied, "On August the 17th, Sir." The trial judge next inquired why Michel did not finish the two reports "contemporaneously with the incidents?" Michel answered, "Case load. Doing a lot of buys, just getting behind."

After the State rested, Magee called Patricia Magee, his wife to whom he had been married since the preceding Friday, and Ernest Magee, both of whom testified that Magee's nickname was "Mooky," and that they had never heard anyone call him "Stump." Neither Magee nor the State established what relation, if any, Ernest Magee was to the Appellant.

### III. Review and resolution of Magee's issues

In his appeal, Magee asserts the following two issues, which we quote *verbatim* from his brief:

I. The verdict of the jury was contrary to the overwhelming weight of the evidence.

II. The sentence imposed on Magee, thirty (30) years without benefit of parole or early release, was disproportionate to the crime committed.

A. First Issue: The verdict of the jury was contrary to the overwhelming weight of the evidence.

The Uniform Criminal Rules of Circuit Court Practice applied to the trial of this case. Rule 5.16 of the Uniform Criminal Rules of Circuit Court Practice[2] then provided:

The court on written notice of the defendant may grant a new trial on any of the following grounds:

. . . .

(2) If the verdict is contrary to law or the weight of the evidence.

UCRCCP 5.16. Rule 5.16 required Magee to preserve this issue by including it in his motion for new trial. In his untitled post-conviction motion Magee asserted: "The verdict is against the overwhelming weight of the evidence." By its order rendered and entered on November 18, 1994, the trial court overruled "[t]he motion for new trial or judgment notwithstanding the verdict." Because Magee did not couch this issue in terms of the trial court's error in denying his motion for a new trial, these preliminary observations are requisite to our recitation of the standard of review which the Mississippi Supreme Court has adopted for analyzing and reviewing the issue of whether a trial court errs when it denies a motion for a new trial. The supreme court's standard of review perforce becomes the appropriate standard of review for this Court.

Motions for a new trial challenge the weight of the evidence and "[implicate] the trial court's sound discretion." *McClain v. State,* 625 So. 2d 774, 781 (Miss. 1993). New trial decisions rest within the discretion of the trial court. *Id.* at 781. A new trial motion should only be granted when the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. *Wetz v. State,* 503 So. 2d 803, 812 (Miss. 1987). This Court will reverse and order a new trial only upon its determination that the trial court abused its discretion when it denied the defendant's motion for new trial. *McClain*, 625 So. 2d at 781.

In *Gandy v. State*, 373 So. 2d 1042, 1045 (Miss. 1979), the Mississippi Supreme Court described the function of the jury as follows:

As is usual in jury cases, the evidence conflicted, but the conflict does not necessarily create a "reasonable doubt" of appellant's guilt. Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution. (citations omitted).

This Court finds the following quotation from Magee's brief to be a fair summary of Magee's argument on this issue:

Magee contends that based on the severe conflict of the description given of the alleged perpetrator at the time of the sale, the actual photograph of Magee which disputes the description given, and the severe discrepancy in the report and the failure to amend or change these reports for eight months and failure to produce the photographs in discovery and even claim that the photograph did not exist, justified granting the directed verdict or peremptory instruction. However, even failing the court's refusal of the directed verdict and peremptory instruction no reasonable juror should have or could have convicted [him] based on the evidence.

To be sure, contradictions and conflicts in the State's case are apparent. Sergeant Michel's detective investigative report, the subject of which was the July 17 crack transaction between officer Conerly and Magee but which he did not prepare until August 17, 1993, included the information that a picture of Magee had been taken on the scene and that this was the picture which Conerly viewed at the Gulfport police station to identify Magee. Conerly had not seen Magee before the first transaction with him on that date. Instead, it was a "mug" shot taken of Magee in 1989 that Conerly viewed at the police station when he identified Magee. Sergeant Michel testified that he took the picture of Magee in which he was wearing a blue, tank-top jersey on July 25, 1993, the date of the second crack transaction between Conerly and Magee at the same location where Michel had seen Magee after he had sold a rock to Conerly a week before on July 18. Of course, Sergeant Michel's detective investigative report about the second transaction on July 25 did not state that Magee had been photographed on that latter date.

Moreover, Conerly's narcotics buy information sheet for the July 25 crack transaction was missing. Conerly's narcotics buy information sheet for the July 18 crack transaction included a description of Magee's race, height, weight, and attire. Conerly's narcotics buy information sheet for the July 25 crack transaction presumably would have included a description of Magee's attire on July 25, so it can be inferred that Conerly's narcotics buy information sheet for the July 25 crack transaction was missing because it would have indicated that Magee was not wearing the blue, tank-top jersey on that latter date. Thus, Magee argues that this Court must deem the cumulative effect of these contradictions and conflicts in the State's case to raise a reasonable doubt in the jurors' minds about whether Magee was in fact the man who sold Conerly drugs on July 18, 1993. After all, Officer Conerly testified that he had made sixty five buys of controlled substances between June 30 and August 27, 1993, a rate of three to four buys per day, and that it was hard to remember those individuals without a photograph.

To support his argument on this issue, Magee cites *Ashford v. State*, 583 So. 2d 1279, 1280 (Miss. 1991), in which the Mississippi Supreme Court reversed and rendered Ashford's conviction of the sale of cocaine because a confidential informant's description of Ashford's physical attributes varied remarkably from Ashford's actual appearance. In *Ashford*, the confidential informant "described the man who sold to him as being five feet six inches tall and weighing 130 pounds and never backed off." *Id.* at 1282. Ashford was six feet tall and weighed 184 pounds. *Id.* In reversing Ashford's conviction, the majority opined: "Major discrepancies between the description the informant gave immediately after the sale--and stood by at trial--and the Defendant's undeniable physical appearance generate a reasonable doubt which no fair-minded juror could ignore." *Id.*

In the case *sub judice* the discrepancy is not in the description of Magee's physical attributes, but rather in the description of what he was wearing on July 18, the date the jury found that he improvidently sold a rock of crack to Conerly. The discrepancy lies in whether he was wearing a blue, tank-top jersey or a green-striped shirt. A discrepancy in attire is less inalterable than is a discrepancy in physical attributes such as height and weight. Moreover, the record contains Sergeant Michel's *mea culpa* and his explanation of the discrepancies in the evidence of Magee's habiliment on June 18, 1993.

On the other hand, the record reflects that Conerly encountered Magee on June 18 and again on June 25. Sergeant Michel testified that he had met Magee two days before June 18 in front of Cohea's Lounge and that Magee told him his name. Michel further testified that after he received Conerly's description of Magee's appearance on June 18, he went to the location where Conerly had let Magee out of the 1988 Toyota pick-up and spotted him immediately. Sergeant Michel testified that he recognized Magee as soon as he spotted him based on Conerly's description of his clothing.

As the Mississippi Supreme Court explained in *Gandy*, the jury had the duty to resolve the conflicts in the evidence, and they did so by convicting Magee of the crime for which he had been indicted, *i. e.*, the transfer and sale of a controlled substance, crack cocaine. It does not sanction an unconscionable injustice to allow the jury's verdict that Magee was guilty of the transfer of a controlled substance to stand because their verdict was not contrary to the overwhelming weight of the evidence. *See Wetz*, 503 So. 2d at 812. Thus, the trial judge did not abuse his discretion when it denied Magee's post-conviction motion for a new trial. *See McClain*, 625 So. 2d at 781. This Court resolves Magee's first issue against him and affirms the trial judge's denial of his motion for a new trial because it finds that the jury's verdict of Magee's guilt was not against the overwhelming weight of the evidence.

B. Second Issue: The sentence imposed on Magee, thirty (30) years without benefit of parole or early release, was disproportionate to the crime committed.

This issue finds its genesis in *Solem v. Helm*, 463 U. S. 277, 292 (1983), in which the United States Supreme Court held:

In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

However, the United States Supreme Court has since decided the case of *Harmelin v. Michigan*, 501 U.S. 957 (1991), in which the relationship of the proportionality of sentence to the Eighth Amendment was reevaluated. The Mississippi Supreme Court analyzed the impact of *Harmelin v. Michigan* on *Solem v. Helm* in the case of *Hopson v. State*, 625 So. 2d 395, 404-05 (Miss. 1993). In *Hopson*, the court wrote:

The issue of disproportionate sentencing was recently revisited by the United States Supreme Court in *Harmelin v. Michigan*, ___ U.S. ___, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991). In a nonmajority section of Harmelin, Justice Scalia stated that the Court's earlier holding in Solem that a criminal sentence must be proportionate to the crime for which the defendant has been convicted was "simply wrong," and the Eighth Amendment does not contain a proportionality guarantee. *Harmelin*, ___ U.S. at ___. However, a majority of the Court in Harmelin refused to extend the proportionality requirement or the individualized sentencing scheme applicable in capital cases to Eighth Amendment cases, affirming a statutorily mandated sentence of life imprisonment without parole for possession of cocaine.

However, even though Harmelin questions the proportionality analysis, there is language in the case to indicate that a "gross proportionality" analysis is still in order. *Harmelin*, ___ U. S. ___, 111 S. Ct. 2680, 115 L. Ed. 2d at 871.

The United States Supreme Court has specifically said "that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle*, 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct 1133 (1980).

This Court has held that "when sentences are within the limits of the statute, the imposition of such sentences is within the sound discretion of the trial court and this Court will not reverse them." *Presley v. State*, 474 So. 2d 612, 620 (Miss. 1985) (citing *Boyington v. State*, 389 So. 2d 485 (Miss. 1980)). However, this Court has also said it will review a sentence where it is alleged that the penalty imposed is disproportionate to the crime charged. *Fleming v. State*, 604 So. 2d 280 (Miss. 1992). *See also Ashley v. State*, 538 So. 2d 1181, 1184-1185 (Miss. 1989).

Before proceeding to apply the principles announced in *Hopson* to Magee's sentence to serve thirty years in the custody of the Mississippi Department of Corrections without the possibility of parole, probation, or early release, this Court notes that in the case of *Stromas v. State*, 618 So. 2d 116, 123-24, (Miss. 1993), the Mississippi Supreme Court affirmed the appellant's sentence of sixty years for the conviction of the felony of the sale of cocaine as a repeat offender in the face of his *Solem* challenge that his sentence was so disproportionate as to violate the Eighth Amendment to the United States Constitution. Magee attempts to distinguish *Stromas* from the facts in the case *sub judice* by reminding us that while he is "technically" a habitual offender, he has not had multiple incarcerations. Magee adds that his one incarceration was for burglaries which he committed when he was twenty two years old. This Court notes that Magee does not challenge the trial judge's adjudication "that [Magee was] a habitual for two prior burglary convictions, separate burglaries, although the sentence was concurrent."

In *Barnwell v. State*, 567 So. 2d 215, 222 (Miss. 1990), the Mississippi Supreme Court noted:

Though no sentence is "per se" constitutional, this Court, in the context of our habitual statutes, as well as in sentencing other offenders, has recognized the broad authority of the legislature and trial court in this area and has repeatedly held that where a sentence is within prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual.

(citations omitted). Section 41-29-139(b)(1) of the Mississippi Code authorizes a maximum sentence of thirty years for the crime of selling cocaine. In addition, Section 99-19-81 of the Mississippi Code mandates that any person twice convicted of a felony "shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation." Miss. Code Ann. § 99-19-81 (Rev. 1994). These two sections of the Mississippi Code of 1972 demonstrate that Magee's sentence to serve

thirty years "without hope of parole or probation" as a recidivist twice convicted previously of felonies was both authorized and mandated by law. The Mississippi Supreme Court has held that "[w]hen sentences are within the limits of the statute, the imposition of such sentences is within the sound discretion of the trial court and this Court will not reverse them." *Presley v. State*, 474 So. 2d 612, 620 (Miss. 1985) (citing *Boyington v. State*, 389 So. 2d 485 (Miss. 1980)).

Because this Court has found that Magee's sentence to serve thirty years "without hope of parole or probation" was both authorized and mandated by law, it declines to conduct a "gross proportionality" analysis of his sentence and affirms the trial court's imposition of that sentence on Magee.

## V. Summary

As this Court has demonstrated, the State's evidence of Magee's guilt of the transfer and sale of a controlled substance contained inconsistencies and conflicts. However, the State's evidence was such that the jury's verdict of his guilt was not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Thus, the trial judge did not abuse his discretion when he denied Magee's post-conviction motion for a new trial. Because Magee stood before the trial judge as a twice-convicted felon, a status which Magee does not dispute in his appeal, Section 99-19-81 of the Mississippi Code of 1972 (Rev. 1994) demanded that the trial judge impose "the maximum term of imprisonment prescribed for such felony," which for the transfer or sale of cocaine is thirty years. Had the trial judge sentenced Magee to a lesser term of years, he would have violated the requirement of Section 99-19-81. Thus, this Court affirms the trial court's final judgment of Magee's guilt of the felony of the transfer and sale of a controlled substance, cocaine, and its sentence of Magee to serve thirty years in the custody of the Mississippi Department of Corrections without hope of parole or probation.

**THE HARRISON COUNTY CIRCUIT COURT'S FINAL JUDGMENT OF THE APPELLANT'S GUILT OF THE TRANSFER AND SALE OF A CONTROLLED SUBSTANCE, COCAINE AND ITS SENTENCE OF THE APPELLANT TO SERVE THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT HOPE OF PAROLE OR PROBATION ARE AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**


**BRIDGES, C.J., McMILLIN P.J., DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. THOMAS, P.J., NOT PARTICIPATING.**

1. Magee does not contest Conerly's method of identifying him from this "mug" shot.

2. By order of the Mississippi Supreme Court the Uniform Circuit and County Court Rules became effective on May 1, 1995. Rule 10.05 of the Uniform Rules of Circuit and County Court is practically identical to Rule 5.16 of the Uniform Criminal Rules of Circuit Court Practice.