928 So.2d 873 (2005)
James Stanley FOSTER, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01470-COA.
Court of Appeals of Mississippi.
October 11, 2005.
Rehearing Denied February 14, 2006.
*877 Thomas H. Comer, Booneville, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before BRIDGES, P.J., MYERS and CHANDLER, JJ.
BRIDGES, P.J., for the Court.
¶ 1. James Stanley Foster's appeal follows his conviction in the Prentiss County Circuit Court. A jury found Foster guilty of possession of 73.7 grams of marijuana with intent to distribute. Due to Foster's proximity to a public park, his conviction carried an enhanced sentence pursuant to Miss.Code Ann. § 41-29-142(1)(Rev.2001). Additionally, the circuit court sentenced Foster as a habitual offender under Miss. Code Ann. § 99-19-81(Rev.2000).
¶ 2. After Foster filed an unsuccessful motion for a new trial or judgment notwithstanding the verdict, the circuit court sentenced Foster to a forty-year term in the custody of the Mississippi Department of Corrections without the benefit of probation or parole and gave him a $60,000 fine. Aggrieved, Foster appeals and raises seven issues:
I. THE TRIAL COURT ERRED IN ALLOWING THE USE OVER [FOSTER'S] OBJECTION OF EVIDENCE NOT DISCLOSED UNDER URCCCP 9.04.
II. THE TRIAL COURT ERRED IN DENYING THE DEFENSE MOTION FOR DIRECTED VERDICT ON ENHANCED POSSESSION WITH INTENT TO DISTRIBUTE CHARGE BECAUSE THE STATE FAILED TO PROVE THE PARK WAS A PUBLIC PARK.
III. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OVER [FOSTER'S] OBJECTION CONCERNING MEASUREMENTS FROM THE ALLEGED CRIME TO THE ALLEGED PARK.
IV. THE TRIAL COURT ERRED IN DENYING THE DEFENSE MOTION FOR MISTRIAL AFTER THE PROSECUTION REPEATEDLY REFERRED TO CERTAIN EVIDENCE AS MARIJUANA WHEN IT HADN'T BEEN ESTABLISHED WHAT THE SUBSTANCE WAS.
V. THE TRIAL COURT ERRED IN OVERRULING [FOSTER'S] MOTION TO SUPPRESS THE DEFENDANT'S STATEMENT.

*878 VI. THE STATE FAILED TO PROVE ITS CASE BEYOND A REASONABLE DOUBT.
VII. THE SENTENCE IMPOSED WAS UNCONSTITUTIONAL.
Finding no error, we affirm.

FACTS
¶ 3. On November 25, 2003, Sergeant Byron Parker of the Booneville, Mississippi Police Department observed Foster driving forty-six miles-per-hour in a thirty mile-per-hour zone. Sergeant Parker attempted to stop Foster but Foster did not stop his car. Foster kept driving until he got to his house. Sergeant Parker followed Foster into the driveway of Foster's home. Foster got out of his car. Sergeant Parker arrested Foster for speeding and driving without a license.
¶ 4. When Sergeant Parker attempted to put Foster in handcuffs, Foster escaped and fled. Foster's escape ended abruptly when Foster tripped over a curb and fell. Sergeant Parker caught Foster and successfully handcuffed Foster. When Sergeant Parker searched Foster, Sergeant Parker found a large amount of marijuana in Foster's pocket.

I. THE TRIAL COURT ERRED IN ALLOWING THE USE OVER [FOSTER'S] OBJECTION OF EVIDENCE NOT DISCLOSED UNDER URCCCP 9.04.
¶ 5. First, Foster claims the State failed to provide him with (1) "documents and statements of prosecution witnesses concerning the arrest;" (2) "discovery in connection with the physical evidence [the State] claimed to have found in the inventory search;" and (3) "witness reports concerning measurements" until noon of the day before trial. Foster reasons that the State failed to follow Rule 9.04(A) of the Uniform Rules of Circuit and County Court. Rule 9.04(A) says "the prosecution must disclose to each defendant ... and permit the defendant ... to inspect, copy, test, and photograph upon written request" certain evidence listed in the rule.
¶ 6. Applying the language of the rule, Foster was not entitled to discovery. The record contains no mention of Foster's written discovery request to the State. The State is only obligated to provide discovery upon a defendant's written request. Id. Foster never gave the State a written discovery request, so the State was never obligated to tender discovery. The trial judge correctly decided to overrule Foster's objection to the State's use of the evidence mentioned above. We affirm the trial judge's decision.

II. THE TRIAL COURT ERRED IN DENYING THE DEFENSE MOTION FOR DIRECTED VERDICT ON ENHANCED POSSESSION WITH INTENT TO DISTRIBUTE CHARGE BECAUSE THE STATE FAILED TO PROVE THE PARK WAS A PUBLIC PARK.
¶ 7. In this issue, Foster attacks his sentence enhancement based on his proximity to a public park. According to Foster, the circuit court should have granted his motion for directed verdict because the State presented insufficient evidence that the park was a "public park." Foster claims that the State presented no evidence from anyone with personal knowledge that the park was a "public park." Before addressing the merits of Foster's claim, we address the State's assertion that Foster failed to preserve this issue for appeal.

A. Did Foster waive this issue?
¶ 8. The State claims that Foster waived his appeal of the motion for a directed verdict, made at the close of the State's case-in-chief, when Foster testified *879 on his own behalf. When a defendant proceeds with his case after the State rests and the court overrules the defendant's motion for a directed verdict, the defendant waives the appeal of the directed verdict. Holland v. State, 656 So.2d 1192, 1197 (Miss.1995).
¶ 9. This is not an issue of first impression. In Davis v. State, 866 So.2d 1107(¶ 19) (Miss.Ct.App.2003), the State claimed that the appellant was procedurally barred from arguing insufficiency of evidence because he failed to file a written motion for a judgment notwithstanding the verdict and failed to request a peremptory instruction. Id. This Court noted that if an appellant files a motion for directed verdict at the conclusion of the State's evidence, and the trial court overrules that motion, the appellant waives that issue on appeal if he proceeds to introduce evidence on his own behalf. Id. However, an appellant may preserve the issue if he renews his motion for directed verdict at the conclusion of all the evidence. Id. (citing Harris v. State, 413 So.2d 1016, 1018 (Miss.1982)). In Davis, the appellant renewed his motion for directed verdict at the conclusion of all the evidence. Therefore, this Court held that the appellant in Davis preserved the issue of insufficiency of the evidence. Id.
¶ 10. In Hodges v. State, 743 So.2d 319(¶ 37) (Miss.1999), the defendant moved for a directed verdict at the close of the prosecution's case-in-chief, but the circuit court denied his motion. Afterwards, the defendant proceeded to put on his own defense. Id. Consequently, the Mississippi Supreme Court held that the defendant was "procedurally barred from seeking review of the legal sufficiency of the State's evidence at the time his motion for directed verdict was considered (i.e., at the close of the prosecution's case in chief)." Id. (citing Whitehurst v. State, 540 So.2d 1319, 1327 (Miss.1989)). The supreme court went on to hold that the defendant, by presenting evidence, did not waive his right to challenge the sufficiency of the evidence "in the event of an adverse jury verdict." Hodges, 743 So.2d at (¶ 37).
¶ 11. In Hodges, the criminal defendant renewed his motion for directed verdict at the close of all the evidence and filed a motion for judgment notwithstanding the verdict. Hodges, 743 So.2d at (¶ 38). The supreme court held that the defendant preserved the issue of the sufficiency of all of the evidence, not just the evidence that supported the prosecution's case. Id.
¶ 12. In the present case, Foster waived his ability to appeal the denial of his motion for directed verdict made at the end of the State's case-in-chief. However, Foster renewed his objection at the close of all evidence. Accordingly, Foster's subsequent motion for directed verdict is presently before this Court. Id.

B. Did Foster object with sufficient specificity?
¶ 13. Next the State claims that Foster's motions for directed verdict, both at the close of the State's case-in-chief and at the close of all evidence, were too general to merit review on appeal. "A motion for a directed verdict on the grounds that the State has failed to make out a prima facie case must state specifically wherein the State has failed to make out a prima facie case." Davis, 866 So.2d at (¶ 21). "Moreover, motions for a directed verdict must be specific and not general in nature. Id. In the absence of such specificity, the trial court will not be put in error for overruling same." Id.
¶ 14. We have resolved that Foster waived review of his motion for directed verdict made at the end of the State's case, when he testified on his own behalf. We are not concerned with the specificity of that objection. However, Foster renewed *880 his objection at the close of all the evidence. At that time, Foster's counsel stated, "[c]omes now the defendant James Stanley Foster and moves the court to direct a verdict on behalf of the defendant and find him not guilty on the basis that the State has failed to prove their case beyond a reasonable doubt." The circuit court overruled that motion as well.
¶ 15. After the circuit court overruled Foster's motion, the court addressed the topic of the jury instructions. During that discussion, Foster's counsel objected to the language of instruction P-2. Foster's counsel stated:
[T]he specific objection I have is to Paragraph 1 in that on the basis I feel that the State has failed to prove, make a prima facie case that he had possession with intent to distribute and also on the basis that they did not prove by competent evidence it was a public park.
At that point, the following exchange took place:
The Court: Counsel, if you are renewing your motion for a directed verdict because of the failure of the State to prove that it was in fact a public park, I will overrule that. And in the consideration of these instructions I ran by you in not allowing you to renew any other motions you might have for a directed verdict or otherwise. I'll let you do that now before we go on with the consideration of the instructions in this case. I think that is the sense of your motion.
Mr. Comer: Yes, sir. I thought I had made a motion at the end.
The Court: You did at the conclusion of the State's case, but now that all the evidence is in, you certainly may restate any motion you wish.
Mr. Comer: Okay, just for clarity and to be careful. Comes now the Defendant at the end of all the testimony in the case and moves the court to direct a verdict for the Defendant and find him not guilty on the basis that the State has failed by competent evidence to prove all the elements required of them as charged in the indictment.
The Court: The motion will be overruled.
Pursuant to this exchange, Foster claims:
When the full context of this exchange is considered, it is clear that defense counsel stated the basis of the motion with sufficient clarity for the trial court to know exactly what elements the defense claimed the State failed to prove and that the court ruled on the motion on the basis of those specifics. Thus, the issue was preserved.
¶ 16. Foster objected to instruction P-2 and argued that the State failed to prove Foster possessed marijuana with intent to distribute. Foster also objected to P-2 and argued that the State failed to prove the park was a public park. Still, Foster's claim in this issue concerns the circuit court's decision to overrule his motion for directed verdict, rather than the trial court's decision to instruct the jury according to instruction P-2. That is, Foster appeals the circuit court's decision to deny his motion for directed verdict, rather than the circuit court's decision regarding jury instructions.
¶ 17. In Davis, the State claimed that the appellant was procedurally barred from appealing the denial of his directed verdict made at the close of the evidence when the appellant did not specifically plead insufficiency of the evidence for certain relevant issues. Davis, 866 So.2d at (¶ 20). This Court held that the appellant in Davis did not raise his appellate arguments in the trial court. Id. at (¶ 24). Accordingly, this Court was not obligated *881 to review appellate arguments which were not presented in the trial court because "[a] trial judge cannot be put in error on a matter which was not presented to him for decision." Id. (citing Crenshaw v. State, 520 So.2d 131, 134-35 (Miss.1988)).
¶ 18. Foster's motions for directed verdict stated that the prosecution failed to "prove their case beyond a reasonable doubt" and "failed by competent evidence to prove all the element's required of them as charged in the indictment." Foster's motion was too general to support appellate review. While Foster did elaborate on the specific element during his objection to the jury instruction, when the trial judge gave Foster an opportunity to renew his motion for directed verdict, Foster did not argue that point. "In the absence of such specificity, the trial court will not be put in error for overruling same." Davis, 866 So.2d at (¶ 21).
¶ 19. Even if this Court were inclined to find that Foster's motion for directed verdict was sufficiently specific, we would not be inclined to reverse the circuit court's decision to deny Foster's motion for directed verdict. For the sake of argument, we turn to the substance of Foster's issue on appeal.

C. Did the State present sufficient evidence that the park was a "public" park?
¶ 20. As mentioned, we consider Foster's contention for the sake of argument. Foster claims the circuit court erred when it overruled his motion for directed verdict. In reviewing Foster's contention, we are mindful of our standard of review. When a defendant files a motion for directed verdict, "the trial court must consider all of the evidence-not just the evidence which supports the State's case-in the light most favorable to the State." Winters v. State, 473 So.2d 452, 459 (Miss.1985) (citations omitted). Further, "once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." Id. We review the circuit court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court. Hodges, 743 So.2d at (¶ 36). Foster last challenged the sufficiency of the evidence during his final motion for directed verdict.
¶ 21. Here, Foster's claim actually involves two separate contentions. While Foster argues that the State presented insufficient evidence that the park was a public park, the basis of that claim is that the testimony the State presented is insufficient because no one with personal knowledge that the park was a public park presented such evidence. Accordingly, it is the lack of personal knowledge on which Foster bases his argument. Truly, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." M.R.E. 602.
¶ 22. So, Foster's claim of insufficient evidence actually depends on our resolution of an entirely separate contention. That is, Foster argues that the circuit court should have excluded certain evidence. Further, Foster argues that, upon proper exclusion of that evidence, there is insufficient evidence that the park was a public park.
¶ 23. Section 41-29-142 of the Mississippi Code provides for enhanced sentencing where a defendant possesses marijuana within a specified distance of a public park. Miss.Code Ann. § 41-29-142 (Rev. 2001). Foster argues that the State offered no documentary evidence or testimony *882 from anyone with personal knowledge that the park was a public park. Foster acknowledges that the State attempted to establish this element through the testimony of Officer Jerry Barnes.
¶ 24. Officer Jerry Barnes is a narcotics investigator for the Booneville Police Department. When asked whether the park was a city park, Officer Barnes responded "as far as I know." Officer Barnes also testified that the area is used by Northeast Mississippi Community College for sports, but he did not know whether Northeast owned the property. According to Foster, Officer Barnes's testimony does not establish the level of personal knowledge necessary to prove this element beyond a reasonable doubt.
¶ 25. The State says there was a sufficient amount of testimony from which a reasonable, hypothetical juror could conclude beyond a reasonable doubt that the park was a public park. The State points to the following: (1) Officer Barnes testified that he met Foster's car in front of the Booneville City Park; (2) Exhibit S-3 reflects that the measurements were taken at the "Booneville City Park;" (3) Officer Barnes testified that "as far as I know. [t]o my knowledge it is" a city park; (4) Officer Barnes testified that the Booneville City Park is maintained by city employees with city equipment; (5) Sergeant Parker, when asked how he knew the park was a public park, testified "[t]hat's where I grew up. That's where I played ball. Everybody knows that's the city park;" (6) Sergeant Parker testified that he saw the city maintaining the park and that he knew it was a city park; (7) When asked whether he agreed that the park was a public park, Foster answered "probably is," and (8) Further, when asked whether he had any doubt in his mind that the park was a public park, Foster testified, "[n]o, I ain't going to doubt it."
¶ 26. There was a wealth of testimony that indicated that the park was a city park and was maintained by the city. Viewed in the light most favorable to the State, a reasonable hypothetical juror would be justified in concluding that a city park would be available for public use, especially in light of the testimony that children played baseball there and the city maintained the property with city equipment. Examining the evidence in harmony with Jury Instruction C-1, which told the jury that they "are also permitted to draw such reasonable inference from the evidence as seems justified in light of [their] own experience," the jury had a sufficient basis to conclude that the park was a public park. Further, Foster's complaint regarding an alleged lack of personal knowledge is a claim that the circuit court erred in admitting evidence, while the subject of this issue is the denial of Foster's motion for directed verdict. Suffice it to say, the circuit court did not err in denying Foster's motion for directed verdict.

III. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OVER [FOSTER'S] OBJECTION CONCERNING MEASUREMENTS FROM THE ALLEGED CRIME TO THE ALLEGED PARK.
¶ 27. Foster's third issue also concerns the sentence enhancement due to his proximity to the park. However, Foster argues three points under this issue.

A. Sufficient Evidence of a Public Park?
¶ 28. First, Foster claims that the trial court erred in allowing testimony regarding the measurements between the park and other locations without first establishing that the park was a public park. Foster's argument depends on our finding a lack of sufficient evidence that the park *883 was a public park. We addressed that topic in the last issue, and we will not address it again here.

B. Proper Enhancement Measurement Points?
¶ 29. Second, Foster claims that Sergeant Parker's testimony establishes that the State failed to take the relevant enhancement measurements from the proper point. Foster's claim stems from his initial evasion of capture. According to Foster, the State should have measured from the point where he was apprehended, rather than his drivewaythe initial point of contact. Foster argues that because there was no testimony that he had marijuana in his possession at the locations from which measurements were taken, the measurements that were taken were not relevant. Put differently, Foster suggests that the State should not have taken the enhancement measurements from the spot where Sergeant Parker stopped Foster at the apartment complex, but should have measured from the spot where Sergeant Parker captured him after he fled on foot.
¶ 30. If this Court follows Foster's logic, we fear our decision would encourage criminals to evade law enforcement officers. Imagine the following scenario: A police officer either questions an individual on foot or orders a driver to stop his car. That individual knows he is in possession of contraband and knows he is in proximity to a location that would enhance his sentence, so he evades capture. As long as that individual can escape the boundary of the enhancement distance, he can avoid an enhanced sentence, based on the precedent that would follow this decisionif we agreed with Foster. However, we disagree.
¶ 31. From the time Sergeant Parker tried to pull him over, Foster was in Sergeant Parker's sight. Foster was not out of Sergeant Parker's sight long enough to acquire the marijuana. It is impossible that Foster could have gotten the marijuana at some point between Sergeant Parker's order to pull over and the point where Foster exited his automobile. There was no testimony that Foster acquired the marijuana after he exited his car and fled on foot. Had Foster not evaded capture in his driveway, Sergeant Parker would have discovered the marijuana there. Had Foster pulled over when ordered, Sergeant Parker may or may not have discovered the marijuana at that point. Either way, Foster should not be allowed to alter the measurement point by evading capture. This Court will not sanction evasion.

C. Hearsay?
¶ 32. Prior to Foster's trial, Sergeant Parker, Officer Barnes, and Officer Austin worked together to measure the enhancement distances. Sergeant Parker indicated the locations of the initial point of contact and the subsequent arrest. Officer Barnes measured the distances and recorded the measurements. Officer Austin used Officer Barnes's recorded measurements to type a report, which became Exhibit S-3. Officers Barnes and Austin each signed S-3.
¶ 33. At trial, the State asked Sergeant Parker about the measurements. Sergeant Parker testified that he could not remember the exact distances without referring to notes. The State handed S-3 to Sergeant Parker and asked him if S-3 refreshed his recollection of the distances. Sergeant Parker read the distances from S-3 out loud. Sergeant Parker stated that the distance from Foster's driveway, the point at which Sergeant Parker initially captured Foster, to the park baseball field was 524 feet, the distance from the point at which he captured Foster to one of the baseball field dugouts was 1,228 feet, and the distance from the point at which he *884 captured Foster to the community center was 1,261 feet.
¶ 34. Sergeant Parker also testified that he did not prepare S-3. At that point, counsel for Foster objected and argued that Sergeant Parker's testimony was hearsay. The circuit court overruled that objection and allowed Sergeant Parker's testimony. Foster did not cross-examine Sergeant Parker regarding his testimony as to the enhancement distances.
¶ 35. On appeal, Foster claims that the circuit court committed a reversible error when it improperly permitted the State to introduce hearsay evidence through Sergeant Parker. The relevance and admission or exclusion of evidence is a matter of the trial court's discretion. Shearer v. State, 423 So.2d 824, 827 (Miss. 1982). This Court will only reverse a trial court's decision to admit or exclude evidence if the trial court's decision prejudices a party's case. Id. So, was Sergeant Parker's testimony hearsay?
¶ 36. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). According to Foster, Sergeant Parker's testimony was hearsay because: (1) Sergeant Parker read from S-3 and S-3 indicated measurements that Officer Barnes took; (2) Officers Barnes and Austin made S-3 out-of-court, and; (3) the State presented information from S-3 through Sergeant Parker to prove the truth of the matter asserted (the distances). We agree.
¶ 37. Still, the State argues that Sergeant Parker's testimony falls within the exceptions to the hearsay rule. Pursuant to our rules of evidence, certain hearsay testimony is "not excluded by the hearsay rule, even though the declarant is available as a witness." M.R.E. 803. The State relies on the "past recollection recorded" exception. That exception appears at Rule 803(5) of the Mississippi Rules of Evidence and reads as follows:
A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly [is an exception to the hearsay rule]. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.
¶ 38. Here, the past recollection recorded exception does not apply. Though there was evidence that Sergeant Parker had knowledge of the contact point and the arrest point, there is no evidence that Sergeant Parker once had knowledge of the relevant measurements. There is no evidence that Sergeant Parker "made or adopted" S-3 when the distances were fresh in his memory. Likewise, there is no evidence that S-3 correctly reflected Sergeant Parker's knowledge of the distances. Consequently, Sergeant Parker's testimony does meet the criteria of the past recollection recorded exception. The trial court abused its discretion when it permitted the State to introduce evidence forbidden by the Mississippi Rules of Evidence.
¶ 39. However, this Court will only reverse a trial court's decision to admit or exclude evidence if the trial court's decision prejudices a party's case. Shearer, 423 So.2d at 827. We cannot say that the trial court's decision prejudiced Foster's case. Even if we remanded the matter for a new trial, the fact remains that Officer Barnes also testified to the distances and the State introduced S-3 through Officer *885 Barnes. Foster does not claim that the circuit court erred when it permitted Officer Barnes's testimony. As such, Foster was not prejudiced and no reversible error results. Accordingly, we affirm.

IV. THE TRIAL COURT ERRED IN DENYING THE DEFENSE MOTION FOR MISTRIAL AFTER THE PROSECUTION REPEATEDLY REFERRED TO CERTAIN EVIDENCE AS MARIJUANA WHEN IT HADN'T BEEN ESTABLISHED WHAT THE SUBSTANCE WAS.
¶ 40. In this issue, Foster claims that the circuit court erred when it overruled his motion for a mistrial. "Whether to declare a mistrial is committed to the sound discretion of the trial court." Brent v. State, 632 So.2d 936, 941 (Miss.1994). We will not overturn a trial judge's decision to overrule a motion for mistrial unless the trial judge committed an abuse of discretion. Bass v. State, 597 So.2d 182, 191 (Miss.1992).
¶ 41. Foster argues that the trial judge should have granted a mistrial because witnesses for the State indicated that the substance found on Foster was marijuana before the State's expert established that the substance was actually marijuana. We find no error from the trial judge's decision to deny Foster's motion for mistrial.
¶ 42. Alicia Waldrop, the State's forensic analyst, testified she "determined the substance to be marijuana, which is a Schedule I, in the amount of 73.7 grams." Additionally, the prosecutor repeatedly asked his witnesses to refer to the marijuana as "alleged marijuana" until he put his witness from the crime lab on the stand. As such, it was clear that the State did not try to use its witnesses to improperly convince the jury that the substance was, in fact, marijuana. Furthermore, jury instruction C-1 instructed the jury that "[y]ou are to disregard all evidence which was excluded by the Court from consideration during the course of the trial." When a trial court instructs a jury, it is presumed the jurors follow the trial court's direction. Moore v. State, 787 So.2d 1282(¶ 30) (Miss.2001). In light of the circumstances, we cannot say that the trial judge abused his discretion. Thus, we affirm the trial judge's decision.

V. THE TRIAL COURT ERRED IN OVERRULING [FOSTER'S] MOTION TO SUPPRESS THE DEFENDANT'S STATEMENT.
¶ 43. Foster gave a statement. Foster claims the circuit court erred when it allowed the State to submit his confession into evidence. "For a confession to be admissible, it must have been given voluntarily and not given as a result of promises, threats or inducements." Martin v. State, 871 So.2d 693(¶ 29) (Miss.2004). "In determining whether a statement is voluntary, the trial judge must first determine whether the accused, prior to the confession, understood the content and substance of the Miranda warning and the nature of the charges of which he was accused." Id.
¶ 44. Foster submits that he did not understand the content and substance of the Miranda warnings and the nature of the charges against him. Further, Foster argues that the State induced his statement because Officer Austin made him believe he would receive leniency if Foster identified his dealer. Foster proposes that, as a result, the circuit court erred when it allowed his statement into evidence.
¶ 45. "Usually, a confession must be voluntary and not the result of promises, threats, or inducements to be deemed admissible." Granger v. State, *886 853 So.2d 830(¶ 11) (Miss.Ct.App.2003). "The test in such cases is whether the inducement is of a nature calculated under the circumstances to induce a confession irrespective of its truth or falsity." Id. "It is the prosecution's burden to prove beyond a reasonable doubt that the confession was voluntary." Id. "The prosecution meets this burden by presenting testimony from an officer or other person having knowledge of the facts, who states that the confession was made voluntarily without threats, coercion, or offer of reward." Id. This Court conducts a limited review when determining if a confession is voluntary. Id. at (¶ 12). "The trial judge sits as finder of fact when he or she determines the voluntariness, and this Court will not overturn the trial judge's decision unless manifestly wrong." Id.
¶ 46. Foster initiated the contact with Officer Barnes. Foster also signed a document by which he waived his Miranda rights. Foster testified that no one promised him anything for his statement. Neither Officer Barnes nor Officer Austin made any offers or promises to Foster. In Granger, the supreme court held that the State made a prima facie case of voluntariness by demonstrating that the defendant initiated contact and received multiple Miranda warnings. Granger, 853 So.2d at (¶ 13). We follow the precedent set forth in Granger and affirm the decision of the circuit court.

VI. THE STATE FAILED TO PROVE ITS CASE BEYOND A REASONABLE DOUBT.
¶ 47. Foster's sixth contention is an attack on the sufficiency of the evidence. Foster cites Jones v. State, 857 So.2d 740 (Miss.2003) as the basis for his claim that the State must prove all elements beyond a reasonable doubt. Foster claims that the State failed to prove that the park was a public park. As stated previously, we have already addressed the merits of this contention and found it lacking. We will not repeat our analysis here. Foster also claims that the State failed to prove the requisite distances for sentence enhancement under Section 41-29-142. We disposed of that contention in issue three, and there in no need to restate our analysis.
¶ 48. Still, Foster also claims that the State failed to prove, beyond a reasonable doubt, that Foster intended to distribute marijuana. Foster notes that Officer Barnes admitted the marijuana could have been for Foster's own use. Foster also points out his testimony that he got one ounce of marijuana from Michael Cox, and that he acquired it for his personal use and did not intend to sell it.
¶ 49. When reviewing the sufficiency of the evidence, "the trial court must consider all of the evidence-not just the evidence which supports the State's case-in the light most favorable to the State." Winters, 473 So.2d at 459. Further, "once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." Id.
¶ 50. Sergeant Parker apprehended Foster with approximately two and one-half ounces of marijuana. The marijuana was stored in bags within a bag. Foster had measuring scales in his possession. Foster testified that he was holding the marijuana and would deliver it when Michael Cox needed some to sell. Viewing the evidence in the light most favorable to the State, the record contains sufficient evidence from which a reasonable, hypothetical juror could convict Foster for intent *887 to distribute marijuana. Accordingly, we affirm.

VII. THE SENTENCE IMPOSED WAS UNCONSTITUTIONAL.
¶ 51. Foster was convicted under Section 41-29-139(a)(1) of the Mississippi Code. That statute makes it "unlawful for any person knowingly or intentionally ... [t]o sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance." Miss.Code Ann. § 41-29-139(a)(1) (Rev. 2001). The circuit court sentenced Foster under three statutes, applied in harmony.
¶ 52. First, according to Section 41-29-142(1) of the Mississippi Code, anyone convicted of intent to sell a controlled substance within the relevant distances of a public park "may be punished by a term of imprisonment or a fine, or both, of up to twice that authorized by Section 41-29-139(b)." Miss.Code Ann. § 41-29-142(1) (Rev.2000).
¶ 53. Pursuant to Section 41-29-139(b)(2), anyone "who violates subsection (a) of this section with an amount less than one (1) kilogram but more than thirty (30) grams of marihuana ... may be imprisoned for not more than twenty (20) years or fined not more than Thirty Thousand Dollars ($30,000.00), or both." Miss.Code Ann. § 41-29-139(b)(2) (Rev.2001). Foster was convicted of possession of 73.7 grams of marijuana with intent to sell within the requisite distances of Section 41-29-142(1). So, by application of Sections 41-29-139(b)(2) and 41-29-142(1), the circuit court could sentence Foster for up to forty years imprisonment and/or $60,000.
¶ 54. Finally, Foster was convicted as a habitual offender pursuant to Section 99-19-81 of the Mississippi Code. According to that statute:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state ... institution. . . shall be sentenced to the maximum term of imprisonment prescribed for such felony and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Miss.Code Ann. § 99-19-81 (Rev.2000).
¶ 55. Thus, the circuit court was obligated by the "shall" provision of Section 99-19-81 to sentence Foster to the maximum term of imprisonment allowable under Sections 41-29-139(b)(2) and 41-29-142(1). Accordingly, by statute, the circuit court had to sentence Foster to forty years imprisonment without the possibility of parole and/or $60,000. That is exactly what the circuit court did. "[A] trial court will not be held in error or held to have abused discretion if the sentence imposed is within the limits fixed by statute." Johnson v. State, 461 So.2d 1288, 1292 (Miss.1984).
¶ 56. THE JUDGMENT OF THE PRENTISS COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF MORE THAN ONE OUNCE BUT LESS THAN 1 KILOGRAM OF MARIJUANA, A SCHEDULE I CONTROLLED SUBSTANCE, WITH INTENT TO SELL WITHIN 1,500 FEET OF A BUILDING OR OUTBUILDING OF A PUBLIC PARK, TRANSFER, OR DISTRIBUTE IS AFFIRMED AND SENTENCE AS A HABITUAL OFFENDER TO FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $60,000 IS AFFIRMED. ALL *888 COSTS OF THIS APPEAL ARE ASSESSED TO PRENTISS COUNTY.
KING, C.J., LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.