IRVING, P.J.,
for the Court:
¶ 1. This appeal arises out of Leonard Carey’s conviction, in the Hinds County Circuit Court, for the murder of Philip Charleston, and resulting life sentence in the custody of the Mississippi Department of Corrections. On April 27, 2010, Carey filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV), which the circuit court denied. On appeal, Carey argues that: (1) the circuit court erred in limiting the cross-examination of Marcus Smith regarding his knowledge of events prior to Charleston’s death; (2) the circuit court erred in limiting the cross-examination of Dr. Adele Lewis regarding Charleston’s toxicology report; (3) the evidence is insufficient to convict Carey of murder; (4) the circuit court erred in denying Carey’s motion for a directed verdict; and (5) the jury’s verdict is against the overwhelming weight of the evidence.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On February 5, 2009, Carey shot and killed Charleston over a dispute during a dice game. Carey testified that Charleston, drunk and high on cocaine at the time, pulled out a knife and threatened to kill him if he did not return the money that Carey had won from him during the dice game. Carey testified that he pulled out his gun and pointed it at Charleston. According to Carey, when Charleston moved toward him, Carey shot Charleston twice. Carey testified that he was only trying to scare Charleston and did not intend to shoot him.
¶ 4. Smith was initially a part of the dice game, but he had stopped playing and was just watching Carey and Charleston play. Smith stated that he saw Carey pull out the gun and point it at Charleston, but he did not see Charleston with a knife. Smith also testified that when the dice game between Carey and Charleston became heated, he told them to “get out [of] my mama[’s] house with that” and went outside to smoke a cigarette. Soon after leaving the room, Smith heard gunshots. Smith initially testified that he had not been with Charleston or Carey during the day and did not see them until they came to his house to shoot dice. On cross-examination, Smith stated that he did spend the morning with Charleston and Carey but could not specify the time when they began to shoot dice.
¶ 5. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Cross-Examination of Marcus Smith

¶ 6. Carey argues that he was denied his fundamental right to confront the witnesses against him when the circuit court limited his cross-examination of Smith regarding his knowledge of events prior to Charleston’s death. During trial, defense counsel attempted to question Smith regarding allegations that he purchased alcohol for Carey and Carey’s *134 brother, who were both minors at the time. The State objected and requested a bench conference on the matter. However, the bench conference was not transcribed or otherwise included in the record. It appears that the circuit court might have denied any further questioning concerning Smith’s trips to the liquor store with Carey and Carey’s brother because defense counsel abandoned this line of questioning following the bench conference. The record, however, contains no evidence of the arguments that were made during the bench conference, the circuit court’s ruling, or any objection to the court’s ruling.
¶ 7. Carey is procedurally barred from raising this issue on appeal because he failed to preserve this alleged error on the record. The Mississippi Supreme Court has stated that it is the responsibility of the party complaining of an error to preserve the record for appeal. Brown v. State, 965 So.2d 1023, 1029 (¶ 24) (Miss.2007). Thus, “[bjecause the bench conference and arguments that occurred therein were not preserved on the record, review of the alleged error is waived.... ” Scott v. State, 796 So.2d 959, 964 (¶ 16) (Miss.2001) (citing Cotton v. State, 675 So.2d 308, 314 (Miss.1996)).

2. Cross-Examination of Dr. Adele Lewis

¶ 8. Carey argues that the circuit court erred in limiting the cross-examination of Dr. Lewis regarding Charleston’s toxicology report. Prior to trial, the State filed a motion in limine to prohibit Carey from introducing evidence of Charleston’s toxicology. The circuit court ruled that evidence of Charleston’s toxicology was not to be mentioned until such evidence became relevant. At trial, the circuit court ruled that Dr. Lewis could testify as to any toxicology evidence within the autopsy report. Dr. Lewis testified that she had read the toxicology report before creating the autopsy report and that the toxicology report revealed that cocaine and alcohol were in Charleston’s system at the time of his death. Dr. Lewis was not allowed to testify as to how these substances could have affected Charleston’s state of mind.
¶ 9. “Limitations placed on cross-examination are reviewed for abuse of discretion.” Jefferson v. State, 818 So.2d 1099, 1109 (¶ 24) (Miss.2002) (citing McDowell v. State, 807 So.2d 413, 422 (¶23) (Miss.2001)). The circuit court’s exercise of discretion will be affirmed unless the ruling resulted in prejudice to Carey. Clark v. State, 40 So.3d 531, 542 (¶29) (Miss.2010). Dr. Lewis, who only performed Charleston’s autopsy, was allowed to testify regarding the presence of cocaine and alcohol in Charleston’s blood. However, not allowing Dr. Lewis to testify as to the effects of those substances on Charleston’s state of mind at the time of the incident did not prejudice Carey’s defense because the jury heard testimony regarding the presence of drugs and alcohol in Charleston’s system at the time of the incident. As such, this issue is without merit.

3. Sufficiency of the Evidence

¶ 10. Carey contends that the evidence is insufficient to sustain his conviction of murder. He made a motion for a directed verdict at the conclusion of the State’s evidence. The circuit court denied the motion, and Carey failed to renew the motion at the conclusion of all of the evidence. “If a defendant puts on evidence in his own defense after the denial of his motion for a directed verdict, he waives his challenge to the sufficiency of the State’s evidence up to that point.” Robinson v. State, 749 So.2d 1054, 1058-59, (¶ 13) Miss.1999). In Carey’s post-trial motion, he *135 challenged the circuit court’s limitation of Dr. Lewis’s and Smith’s cross-examinations. Additionally, he asserted that the circuit court erred in failing to grant a directed verdict. However, the record does not show that Carey filed a peremptory instruction, or, as stated, renewed his motion for a directed verdict at the conclusion of all of the evidence. Thus, Carey is procedurally barred from raising the issue on appeal. Moore v. State, 52 So.3d 339, 340 (¶ 18) (Miss.2010).
 ¶ 11. Procedural bar aside, this issue is also without merit. When reviewing the sufficiency of the evidence, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Carey admitted that he shot and killed Charleston. While Carey testified that Charleston was threatening him, there was also evidence that Carey killed Charleston without adequate provocation or the need to protect himself from harm. Ultimately, it is the jury’s responsibility to balance the credibility of witnesses and determine how much weight to give their testimonies. Latiker v. State, 918 So.2d 68, 73 (¶ 12) (Miss.2005). Here, the evidence “does not point so overwhelmingly in favor of [Carey] that reasonable men could not have arrived at a guilty verdict....” Id. Therefore, this issue is without merit.
A Directed Verdict on the Basis of Imperfect Self-Defense
¶ 12. Carey asserts that the circuit court erred in denying his motion for a directed verdict based on the theory of imperfect self-defense. Our supreme court has long held that a motion for a directed verdict must be specific in nature. Sheffield v. State, 749 So.2d 123, 126 (¶ 10) (Miss.1999). Furthermore, this Court has held that “[i]n the absence of such specificity, the [circuit] court will not be put in error for overruling [the] same.” Foster v. State, 928 So.2d 873, 879 (¶13) (Miss.Ct.App.2005) (quoting Davis v. State, 866 So.2d 1107, 1113 (¶ 21) (Miss.Ct.App.2003)). In neither his motion for a directed verdict nor his motion for a new trial or, alternatively, for a JNOV, did Carey specifically address the issue of imperfect self-defense or explain why he was entitled to a directed verdict based on self-defense. As such, he is procedurally barred from raising this issue on appeal.
¶ 13. Procedural bar notwithstanding, Carey argues that because the State failed to prove “malicious intent,” he should have been convicted of manslaughter instead of murder under the theory of imperfect self-defense. Our supreme court has recognized the theory of imperfect self-defense as “an intentional killing ... done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent great bodily harm.” Moore v. State, 859 So.2d 379, 383 (¶ 9) (Miss.2003) (quoting Wade v. State, 748 So.2d 771, 775 (¶ 12) (Miss.1999)).
¶ 14. Carey argues that he acted in self-defense when he shot Charleston because Charleston had threatened him with a knife. Furthermore, Carey argues that the State did not prove that he had acted with malice or deliberate design. However, our supreme court has held that malice, or deliberate design, may be inferred from the use of a deadly weapon. Phillips v. State, 794 So.2d 1034, 1037 (¶11) (Miss.2001). Carey admitted that he shot Charleston, and no other witness corroborated Carey’s assertion that Charleston *136 was the initial aggressor. Considering the evidence in the light most favorable to the State, we hold that the State presented sufficient evidence of malicious intent. Thus, this issue is without merit.

5. Weight of the Evidence

¶ 15. Carey argues that the jury’s verdict is against the overwhelming weight of the evidence. However, “if an appellant raises for review an issue not raised in the pleadings, transcript, or rulings, the appellant must have preserved the issue by raising it in a motion for [a] new trial.” Page v. State, 64 So.3d 482, 489 (¶29) (Miss.2011) (quoting Collins v. State, 594 So.2d 29, 36 (Miss.1992)). Carey is procedurally barred from raising this issue on appeal because he did not raise it in his motion for a new trial.
¶ 16. Procedural bar aside, an appellate court will not disturb a jury verdict unless “it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Hogan v. State, 48 So.3d 512, 514 (¶ 9) (Miss.2010) (quoting Boyd v. State, 977 So.2d 329, 336 (¶27) (Miss.2008)). Carey’s contention is based solely on the plausibility of Smith’s inconsistent testimony concerning how long Carey and Charleston had been shooting dice before Charleston was shot and whether or not he was with Carey and Charleston earlier during the day. However, “[cjonflicting testimony does not evince overwhelming evidence; ‘where the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury’s duty to resolve the conflict.’ ” Brown v. State, 995 So.2d 698, 702 (¶ 13) (Miss.2008). Carey’s assertions simply do not support a finding that the verdict is against the overwhelming weight of the evidence. This issue is without merit.
¶ 17. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J, GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. FAIR, J., NOT PARTICIPATING.